**BLANK ROME LLP**

1271 Avenue of the Americas
New York, NY 10020
Tel:   212-885-5000
Fax:   212-885-5001
Ira L. Herman
Evan J. Zucker

*Special Litigation Counsel for Plaintiff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------ x

In re:                                                    Chapter 11

WANSDOWN PROPERTIES CORPORATION N.V.,      Case No.:  19-13223 (SMB)

          Debtor.

------------------------------------------------------------------ x

WANSDOWN PROPERTIES CORPORATION N.V.,

     Plaintiff
                                                          Adv. Pro. No. 20-01056
        v.

29 BEEKMAN CORP.,

     Defendant.

------------------------------------------------------------------ x

**DEBTOR'S MEMORANDUM OF LAW IN SUPPORT**
**OF MOTION FOR SUMMARY JUDGMENT AND IN**
**OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... iii

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT ............................................................................................................................. 4

I.      THE DEBTOR, PLAINTIFF, IS ENTITLED TO A JUDGMENT AS A
MATTER OF LAW AS THERE IS NO GENUINE DISPUTE OF ANY
MATERIAL FACT .......................................................................................................... 4

     A.     The Debtor is entitled to summary judgment as to 29 Beekman's breach of
contract ................................................................................................................... 5

          i.     29 Beekman Breached the Purchase Agreement Twice ............................ 6

          ii.     The Debtor satisfied its obligations under the Purchase Agreement ........ 11

               a.     All defaults under the Purchase Agreement that may have
arisen prior to entry of the Sale Order are barred by entry of
the Sale Order .............................................................................. 15

               b.     The Debtor did commit fraud or make any material
misrepresentations .......................................................................... 18

          iii.     The Debtor has suffered damages ........................................................... 20

     B.     The Debtor is entitled to summary judgment declaring the Downpayment
is property of the estate and Defendant relinquished its interest in the
Downpayment ....................................................................................................... 21

II.     THE AMENDED COMPLAINT SATISFIES THE REQUIREMENTS OF FED.
R. CIV. P. 12(b)(6) ....................................................................................................... 22

     A.     The Complaint Sets forth Detailed Allegations of Defendant's Breach of
Contract ................................................................................................................ 23

     B.     The Debtor Adequate Pled a Claim for a Declaratory Judgment ........................ 24

CONCLUSION ....................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.H.A. Gen. Const., Inc. v. New York City Hous. Auth.*,
92 N.Y.2d 20 (1998) ...................................................................................10, 11

*A.I. Credit Corp. v. Liberty Mut. Ins. Co.*,
No. 94 CIV. 6022 (KTD), 1996 WL 3962 (S.D.N.Y. Jan. 4, 1996) ..........................5

*Allen v. Coughlin*,
64 F.3d 77 (2d Cir. 1995).........................................................................................4

*Amazon.com, Inc. v. Nat'l Ass'n of Coll. Stores, Inc.*,
826 F. Supp. 2d 1242 (W.D. Wash. 2011).............................................................22

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)............................................................................................4, 5

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...............................................................................................22

*Barbu v. Life Ins. Co. of N. Am.*,
No. 12-cv-1629, 2013 U.S. Dist. LEXIS 178611 (E.D.N.Y. Dec. 19, 2013) .........21

*Barton v. Lawrence Grp., Inc.*,
262 B.R. 26 (N.D.N.Y. 2000), *vacated sub nom. In re Lawrence*, 293 F.3d
615 (2d Cir. 2002)..................................................................................................17

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).........................................................................................22, 23

*In re Berry Pub. Servs., Inc.*,
231 B.R. 676 (Bankr. N.D. Ill. 1999) ....................................................................17

*In re Best Payphones, Inc.*,
432 B.R. 46 (S.D.N.Y. 2010), *aff'd,* 450 F. App'x 8 (2d Cir. 2011)........................6

*Breeden v. Kirkpatrick & Lockhart, LLP*,
268 B.R. 704 (S.D.N.Y. 2001), *aff'd sub nom. In re Bennett Funding Grp.*,
*Inc.*, 336 F.3d 94 (2d Cir. 2003) ............................................................................19

*In re CBI Holding Co., Inc.*,
529 F.3d 432 (2d Cir. 2008)...................................................................................18

iii

*In re Cellnet Data Sys., Inc.*,
313 B.R. 604 (Bankr. D. Del. 2004), *supplemented,* No. 00-00844(PJW), 2005
WL 1331257 (Bankr. D. Del. June 6, 2005) ...........................................................15

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ...................................................................................................4

*Coal. for Adequacy & Fairness in Sch. Funding, Inc. v. Chiles*,
680 So. 2d 400 (Fla. 1996)........................................................................................24

*In re Colarusso*,
280 B.R. 548 (Bankr. D. Mass. 2002), *aff'd,* 295 B.R. 166 (B.A.P. 1st Cir.
2003), *aff'd,* 382 F.3d 51 (1st Cir. 2004) ................................................................16

*Columbus Park Corp. v. Department of Housing Preservation and Dev.*,
80 N.Y.2d 19 (1992) .................................................................................................13

*Connecticut Nat. Bank v. Trans World Airlines, Inc.*,
762 F. Supp. 76 (S.D.N.Y. 1991) ..............................................................................5

*Crossland Fed. Sav. Bank v. by F.D.I.C.*,
No. 93 CIV. 2925 (JFK), 1994 WL 30460 (S.D.N.Y. Jan. 28, 1994) .......................5

*In re Cult Awareness Network, Inc.*,
151 F.3d 605 (7th Cir. 1998) ...................................................................................16

*Delaware & Hudson Ry. Co. v. Consol. Rail Corp.*,
902 F.2d 174 (2d Cir. 1990)........................................................................................4

*In re Diamond Mfg. Co., Inc.*,
164 B.R. 189 (Bankr. S.D. Ga. 1994) ......................................................................15

*In re DPH Holdings Corp.*,
553 B.R. 20 (Bankr. S.D.N.Y. 2016) .........................................................................6

*In re Elliot*,
94 B.R. 343 (E.D. Pa. 1988) .....................................................................................16

*Feeley v. Whitman Corp.*,
65 F. Supp. 2d 164 (S.D.N.Y. 1999)...........................................................................5

*In re Garfinkle*,
672 F.2d 1340 (11th Cir. 1982) ................................................................................17

*Gulf Oil Corp. v. Am. Louisiana Pipe Line Co.*,
282 F.2d 401 (6th Cir. 1960) ...................................................................................10

*HSBC Bank USA v. National Equity Corp.*,
  279 A.D.2d 251 (1st Dep't 2001) ........................................................13

*Lamarche Food Prod. Corp. v. 438 Union, LLC*,
  178 A.D.3d 910, 115 N.Y.S.3d 436 (N.Y. App. Div. 2019) ..........................7

*Levy v. Bessemer Trust Co., N.A.*,
  1997 U.S. Dist LEXIS 11056, No. 97 Civ. 1785 (S.D.N.Y. July 30, 1997)..........23

*Liberty Mut. Ins. Co. v. N. Picco & Sons Contracting Co.*,
  No. 05 CIV. 217 (SCR), 2008 WL 190310 (S.D.N.Y. Jan. 16, 2008) ..................5

*Lucente v. Int'l Bus. Machines Corp.*,
  310 F.3d 243 (2d Cir. 2002)..............................................................7

*In re Lykes Bros. S.S. Co., Inc.*,
  221 B.R. 881 (Bankr. M.D. Fla. 1997) ................................................15

*Malowney v. Fed. Collection Deposit Grp.*,
  193 F.3d 1342 (11th Cir. 1999) ........................................................24

*Maryland Cas. Co. v. Pac. Coal & Oil Co.*,
  312 U.S. 270 (1941)......................................................................21

*Mediators, Inc. v. Manney (In re Mediators, Inc.)*,
  105 F.3d 822 (2d Cir. 1997)............................................................19

*MedImmune, Inc. v. Genentech, Inc.*,
  549 U.S. 118 (2007)......................................................................24

*Medytox Diagnostics, Inc. v. Samuels*,
  No. 14-CIV-20719, 2014 WL 12606310 (S.D. Fla. July 18, 2014) ................20

*Matter of Met-L-Wood Corp.*,
  861 F.2d 1012 (7th Cir. 1988) ........................................................17

*Miller v. Meinhard–Commercial Corp.*,
  462 F.2d 358 (5th Cir. 1972) ..........................................................17

*NCL Corp. v. Lone Star Bldg. Centers (E.) Inc.*,
  144 B.R. 170 (S.D. Fla. 1992) ........................................................15

*Netrix Leasing, LLC v. K.S. Telecom, Inc.*,
  No. 00-CIV-3375(KMW), 2001 WL 228362 (S.D.N.Y. Mar. 7, 2001)..................4

*Norcon Power Partners, L.P. v. Niagara Mohawk Power Corp.*,
  92 N.Y.2d 458 (1998) ....................................................................7

*In re Residential Capital, LLC*,
    533 B.R. 379 (Bankr. S.D.N.Y. 2015) .................................................................6

*Rexnord Holdings, Inc. v. Bidermann*,
    21 F.3d 522 (2d Cir. 1994)...........................................................................5

*Rodriguez v. State Farm Mut. Auto. Ins. Co.*,
    No. 1:13-CV-21386-DLG, 2013 WL 12064853 (S.D. Fla. June 18, 2013) ...........................20

*S. & S. Realty Corp. v. Kleer-Vu Indus., Inc.*,
    575 F.2d 1040 (2d Cir. 1978).........................................................................5

*In re Saba Enterprises, Inc.*,
    421 B.R. 626 (Bankr. S.D.N.Y. 2009)..............................................................23

*In re Sapolin Paints, Inc.*,
    20 B.R. 497 (Bankr. E.D.N.Y. 1982)...............................................................16

*Sibbald v. Bethlehem Iron Co.*,
    83 N.Y. 378 (1881) ..................................................................................10

*Smith v. City of New York*,
    697 F. App'x 88 (2d Cir. 2017) ......................................................................5

*Stern v. Gepo Realty Corp.*,
    289 N.Y. 274 (1942) ................................................................................10

*Terwilliger v. Terwilliger*,
    206 F.3d 240 (2d Cir. 2000)..........................................................................23

*Trott v. Platinum Mgmt. (NY) LLC (In re Platinum-Beechwood Litig.)*,
    No. 18-CV-10936 (JSR), 2019 WL 2569653 (S.D.N.Y. June 21, 2019),
    *reconsideration denied*, 400 F. Supp. 3d 2 (S.D.N.Y. 2019) .................................19

*United Airlines, Inc. v. Ins. Co. of State of Pa.*,
    385 F. Supp. 2d 343 (S.D.N.Y. 2005), *aff'd sub nom. United Air Lines, Inc. v.
    Ins. Co. of State of PA*, 439 F.3d 128 (2d Cir. 2006)........................................6

*Vandegrift v. Cowles Eng'g Co.*,
    161 N.Y. 435 (1900) ................................................................................10

*Vasile v. Dean Witter Reynolds Inc.*,
    20 F.Supp.2d 465 (E.D.N.Y. 1998) ..................................................................3

*Yacht Club on the Intracoastal Condo. Ass'n, Inc. v. Lexington Ins. Co.*,
    No. 10-81397-CIV, 2010 WL 11561157 (S.D. Fla. Nov. 30, 2010) .........................20

**Statutes**

11 U.S.C. § 363.................................................................................6, 8, 16, 17

11 U.S.C. § 363(m)...................................................................................15

11 U.S.C. § 365....................................................................................2, 15

11 U.S.C. § 541.........................................................................................2

28 U.S.C. § 2201(a)..................................................................................21

N.Y. Tax Law § 1402-a..........................................................................8, 13

**Other Authorities**

2–17 Moore's Manual of Federal Practice and Procedure, § 17.03[3], Matthew
    Bender & Co., Inc. (2006) ...............................................................3

Fed. R. Bankr. P. 7056...............................................................................4

Fed. R. Civ. P. 12(b)(6)....................................................................3, 22, 23

Fed. R. Civ. P. 56....................................................................................1, 4

Fed. R. Civ. P. 56(a)...................................................................................4

Restatement (Second) of Contracts § 225 (1981) ......................................11

Wansdown Properties Corporation N.V. (the "**Debtor**") by and through its undersigned counsel, hereby submits this motion for summary judgment[1] and in opposition to the *Defendant's Motion to Dismiss the Complaint* (the "**Motion to Dismiss**"), filed on March 13, 2020 [ECF No. 6], by Defendant, 29 Beekman Corp. ( "**29 Beekman**"), and respectfully states as follows:

## PRELIMINARY STATEMENT

1.      There is no genuine issue of material fact in dispute in this adversary proceeding, nor is there any question the causes of action in the Complaint are sufficiently pled.   The Complaint[2] pleads, and it is undisputed, that 29 Beekman failed to timely to pay the purchase price for the real property located at 29 Beekman Place, New York (the "**Townhouse**").   It is equally undisputed and the facts demonstrate that 29 Beekman (a) has engaged in conduct evidencing its determination not to perform under the Purchase Agreement and Sale Order, (b) has failed to timely perform under the Purchase Agreement and Sale Order, (c) has defaulted under the Purchase Agreement and Sale Order, and (d) has materially breached the Purchase Agreement and Sale Order.

2.      Additionally, it cannot be disputed that 29 Beekman never filed an objection to entry of the Sale Order, despite ample opportunity to do so, and appeared in court, by counsel of record, who remained silent through two hearings– while failing to raise a single objection, including the existence of a breach, to the assumption of the Purchase Agreement, as contemplated by the Sale Order.   In concocting the argument that the Debtor materially breached the Purchase Agreement, 29 Beekman willfully ignores that such claim, which anyway is without merit, has been foreclosed by entry of the Sale Order which (a) finds that the Purchase Agreement was "negotiated

---

[1] Pursuant to Federal Rule of Civil Procedure 56 and Local Rule 7056-1(b) of this Court, in connection with the Debtor's motion for summary judgment the Debtor is also filing its Statement of Undisputed Facts (hereinafter referred to as "**Dr. Stmt. Facts**."
[2] All terms used but not defined herein shall have the meaning ascribed to such terms in the Complaint.

by the Debtor and 29 Beekman "at arm's length, **without collusion or fraud,** and in good faith, (b) authorizes the sale of estate property, pursuant to 363 of the Bankruptcy Code, (c) provides for the assumption of the Purchase Agreement under Section 365, by the Debtor, (d) **overrules all objections**, (e) states that the Sale Order serves as a permanent bar to the subsequent assertion of defaults that antedate entry of such order, and (f) states that the Sale Order no longer is subject to appeal or re-argument. Moreover, there can be no dispute that Defendant, represented by counsel who appeared at the hearings regarding the Sale Motion on January 14, 2020 and January 16, 2020, willfully chose not to raise a timely objection to entry of the Sale Order before it was entered or during the 14-day period to appeal or move to reargue following entry of the Sale Order.

3.      After declining to object to entry of the Sale Order, after being provided with notice an and opportunity to be heard pursuant to the rules of this Court, and the Court having explicitly found, among other things, that the Purchase Agreement was entered without collusion or fraud, 29 Beekman cannot now complain either about substance or process – its opportunity to do so has been procedurally and substantively foreclosed.  Any allegation that the Debtor materially breached the Sale Agreement prior to the Sale Hearing has no legal relevance and is nothing more than a "red herring" meant to mislead the Court.  Thus, the Motion to Dismiss filed by 29 Beakman is nothing more than a collateral attack on a valid and enforceable order of this Court.

4.      For these reasons, all as more fully demonstrated below, Debtor is entitled to judgment as a matter of law, as follows: (a) 29 Beekman has materially breached the Purchase Agreement by failing to pay the purchase Price by the Final Date and, as a result, (b) Debtor is entitled to a declaratory judgment determining that (i)  Debtor is entitled to retain the Downpayment as liquidated damages pursuant to the Sale Agreement, (ii) the Downpayment is property of the Debtor's estate pursuant to section 541 of title 11 of the United States Code (the

"**Bankruptcy Code**"), and (iii) 29 Beekman's right, title, and interest in and to the Downpayment is extinguished and terminated as a result of its material breach of the Purchase Agreement and Sale Order. Additionally, and concomitantly, the Debtor is entitled to entry of an order of this Court providing that the Escrowee deliver the down payment to the Debtor and releasing the Escrowee.

5.      Additionally, since 29 Beekman has styled its moving papers as a motion to dismiss, Debtor is entitled to a finding that the Complaint has adequately pled the causes of action set forth in the Complaint under the applicable rules of this Court governing such pleadings and denying the relief sought by 29 Beekman in its Motion to Dismiss.

6.      While 29 Beekman has styled its moving papers as "a motion to dismiss," 29 Beekman improperly seeks affirmative relief beyond the mere dismissal of the Complaint. 29 Beekman seeks a judgment that it is entitled to the Downpayment. Motion to Dismiss, at p. 17. Thus, the Motion to Dismiss should be treated as a motion for summary judgment.[3] Here, as set forth below, the Complaint plainly meets the pleading standard. And, when considering the Motion to Dismiss as a motion for summary judgment, 29 Beekman fails to demonstrate as a matter of law that it is entitled to a judgment. Rather, the undisputed facts dictate a finding of judgment for the Debtor.

---

[3] In fact, "if a party presents matters outside the complaint, the court *must* convert the motion to dismiss into a summary judgment motion." 2–17 Moore's Manual of Federal Practice and Procedure, § 17.03[3], Matthew Bender & Co., Inc. (2006) (emphasis added); *see also Vasile v. Dean Witter Reynolds Inc.*, 20 F.Supp.2d 465, 474 (E.D.N.Y. 1998) (holding that when deciding a Fed. R. Civ. P. 12(b)(6) motion, courts are directed to treat the motion as one for summary judgment if matters outside the pleading are presented to and not excluded by the court).

<u>**ARGUMENT**</u>

I.      **THE DEBTOR, PLAINTIFF, IS ENTITLED TO A JUDGMENT AS A MATTER OF LAW AS THERE IS NO GENUINE DISPUTE OF ANY MATERIAL FACT**

7.      Under Rule 56 of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995).

8.      The movant initially bears the burden of establishing the absence of any genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 322–23. That burden can be satisfied by demonstrating the absence of evidence to support the non-movant's case. *Id.* at 325.

9.      Once the movant demonstrates that there is no genuine issue of material fact, the non-movant is required to prove the existence of a factual dispute requiring trial. *Celotex Corp.*, 477 U.S. at 323; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Conclusory allegations cannot suffice to meet this burden, and the non-moving party must provide "more than a scintilla of evidence" and establish "more than some metaphysical doubt as to the material facts." *Delaware & Hudson Ry. Co. v. Consol. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (citations and internal quotation marks omitted). In other words, in order to survive a motion for summary judgment, the non-moving party must come forward with specific evidence "sufficient to establish the existence of an element essential to [the movant's] case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. 317; *see also Netrix Leasing, LLC v. K.S. Telecom, Inc.*, No. 00-CIV-3375(KMW), 2001 WL 228362, at *3 (S.D.N.Y. Mar. 7, 2001) ("Once a motion for summary judgment is made and supported, the burden then shifts to the non-moving party to set

forth specific facts that show that there is a genuine issue to be tried."). "If the evidence [offered in opposing summary judgment] is merely colorable ... or is not sufficiently probative ... summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (citations omitted).

10. Summary judgment may be appropriate before discovery is completed. *See Smith v. City of New York*, 697 F. App'x 88 (2d Cir. 2017). Indeed, where the absence of genuine issues of material facts is clear, courts within this Circuit have routinely granted summary judgment even before discovery has begun. *See, e.g.*, *S. & S. Realty Corp. v. Kleer-Vu Indus., Inc.*, 575 F.2d 1040, 1044 (2d Cir. 1978) (upholding district court's "grant [of] summary judgment" even before opposing party "had an opportunity to begin discovery"); *Liberty Mut. Ins. Co. v. N. Picco & Sons Contracting Co.*, No. 05 CIV. 217 (SCR), 2008 WL 190310, at *4 (S.D.N.Y. Jan. 16, 2008) ("a court may consider a motion for summary judgment even before discovery begins"); *Feeley v. Whitman Corp.*, 65 F. Supp. 2d 164, 172 (S.D.N.Y. 1999) (summary judgment should be granted where opposing party "offers no persuasive argument that [it] requires any discovery to oppose" the motion); *A.I. Credit Corp. v. Liberty Mut. Ins. Co.*, No. 94 CIV. 6022 (KTD), 1996 WL 3962, at *4 (S.D.N.Y. Jan. 4, 1996) (granting summary judgment "before any discovery was taken"); accord *Crossland Fed. Sav. Bank v. by F.D.I.C.*, No. 93 CIV. 2925 (JFK), 1994 WL 30460, at *4 (S.D.N.Y. Jan. 28, 1994); *Connecticut Nat. Bank v. Trans World Airlines, Inc.*, 762 F. Supp. 76, 79 (S.D.N.Y. 1991).

A. **The Debtor is entitled to summary judgment as to 29 Beekman's breach of contract**

11. To establish a claim for breach of contract under New York law, a plaintiff must show: "(1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages." *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525 (2d Cir. 1994).

12.     Under New York law, "the interpretation of a contract is a question of law that may be properly decided on a motion for summary judgment, provided the language of the contract at issue is clear, not ambiguous. *In re Residential Capital, LLC*, 533 B.R. 379, 398 (Bankr. S.D.N.Y. 2015). "When an agreement is unambiguous on its face, it must be enforced according to the plain meaning of its terms." *In re DPH Holdings Corp.*, 553 B.R. 20, 27 (Bankr. S.D.N.Y. 2016). Contracts are not ambiguous because creative lawyers can ascribe different meanings to them; thus, language is unambiguous where the interpretation urged by one party would strain the contract beyond its reasonable and ordinary meaning. *United Airlines, Inc. v. Ins. Co. of State of Pa.*, 385 F. Supp. 2d 343, 349 n.6 (S.D.N.Y. 2005), *aff'd sub nom. United Air Lines, Inc. v. Ins. Co. of State of PA*, 439 F.3d 128 (2d Cir. 2006).

### i.     *29 Beekman Breached the Purchase Agreement Twice*

13.     The undisputed facts of this case demonstrate 29 Beekman breached the Purchase Agreement on at least two occasions; (a) on or about January 15, 2020 when 29 Beekman anticipatorily repudiated the contract, and (b) by taking actions over a period of time to avoid a closing and failing to close on or prior to the "Final Date."[4]

14.     It is well established that in order to constitute an anticipatory breach of contract there must be a positive and unequivocal manifestation on the part of the party allegedly repudiating that he will not render the promised performance when the time fixed for it in the contract arrives. *In re Best Payphones, Inc.*, 432 B.R. 46, 54 (S.D.N.Y. 2010), *aff'd,* 450 F. App'x

---

[4] Paragraph 52(d) of the Purchase Agreement provides: "The Closing shall occur within forty-five (45) days after the entry of the Confirmation Order but no later than January 31, 2020 (such January 31, 2020 date, as extended hereunder, the "**Final Date**"); provided, however, that Purchaser may extend such Final Date, on one or more occasions, until the earlier of 30 days after the entry of the Confirmation Order or January 31, 2021 by notice to Seller prior to the passing of the then effective Final Date." The Confirmation Order is defined as "an order confirming the Plan, or if not possible, then approving a 363 Sale" containing certain provisions as set forth in Paragraph 52(a) of the Purchase Agreement. The Confirmation Order is thus defined to include the Sale Order which is an order approving the sale of the Townhouse to 29 Beekman under section 363 of the Bankruptcy Code.

8 (2d Cir. 2011); *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002); *Norcon Power Partners, L.P. v. Niagara Mohawk Power Corp.*, 92 N.Y.2d 458 (1998).

15.     Here, 29 Beekman on January 15, 2020, expressly stated it is "withdrawing from any further voluntary participation in a pre-plan 363 sale" and would not close on the sale of the Townhouse.  Herman Decl., Ex. C.  This statement constituted an unequivocal intent not to perform.  *Lamarche Food Prod. Corp. v. 438 Union, LLC*, 178 A.D.3d 910, 910, 115 N.Y.S.3d 436, 437 (N.Y. App. Div. 2019) (letter from buyer's counsel reflected a positive and unequivocal repudiation of the contract by defendant, thereby entitling plaintiffs to retain deposit as liquidated damages under contract); Herman Decl., Ex. E, at 2:20 ("COURT: All right. Isn't that just a repudiation 20 then?").  Such statement is in direct contradiction to 29 Beekman's clear obligations under the Purchase Agreement to close.  Specifically, the Purchase Agreement provided 29 Beekman had an obligation to close regardless of whether the Debtor filed for bankruptcy, as there is no condition requiring a bankruptcy filing.  Indeed, the Purchase Agreement states that "if Seller does not file such [chapter 11] proceeding or it is dismissed for any reason, then *this Contract shall remain a binding obligation of Seller to sell and Purchaser to buy the Premises as set forth herein apart from the contemplated Bankruptcy Court proceeding*."  Herman Decl, Ex. A, Purchase Agreement, ¶ 51(a)(emphasis added).

16.     29 Beekman has suggested that an exemption from the mansion tax under the Bankruptcy Code was expressly bargained for under the Purchase Agreement.  However, this simply cannot be true, as there is no provision in the Purchase Agreement requiring the Debtor to pay the mansion tax in the absence of an exemption pursuant to the Bankruptcy Code, whether or not the Debtor has filed a bankruptcy case.  Indeed, as a matter of New York State law absent an express writing to the contrary (or a bankruptcy order exempting the tax), the buyer – *i.e.*, 29

7

Beekman – is responsible for such tax. N.Y. Tax Law § 1402-a ("the additional tax imposed by this section shall be paid by the grantee.").

17.     Additionally, the Purchase Agreement requires 29 Beekman, in the event that the Debtor did file for bankruptcy, to consummate the purchase of the Townhouse through an "order confirming [a] Plan, *or if not possible, then approving a 363 Sale*." Those were the two separate paths forward if the Debtor filed for bankruptcy relief. Thus, it cannot be said that a closing was ever contingent solely on the entry of a confirmation order in a bankruptcy case, or even the filing of a bankruptcy case. Rather, the Purchase Agreement contemplates a sale either in or out of bankruptcy, and, if in bankruptcy, then either pursuant to an order confirming a plan of reorganization or an order pursuant to section 363 of the Bankruptcy Code. Accordingly, the Purchase Agreement requires Defendant to close, either in a bankruptcy, pursuant to an appropriate order of the court, either confirming a plan or approving a section 363 sale, or outside of a bankruptcy, without entry of any order whatsoever.

18.     29 Beekman also breached the Purchase Agreement by failing to close on or before the Final Date. The Purchase Agreement provided that:

> The closing of the transactions contemplated herein ("Closing Date") shall take place no later than the forty-five (45) days after the Confirmation Order which becomes final and non-appealable, at the office of Blank Rome LLP, 1271 Avenue of the Americas, New York, NY 10020, provided, however, that in no event shall the Closing take place later than January 31, 2020, subject to extension of the Final Date (defined below).
>
> . . .
>
> In addition to the conditions set forth in Paragraph 13 of this Contract, this Contract, Purchaser's obligation to purchase the Premises, and Seller's obligation to convey the Premises in accordance with this Contract are also subject to, and conditioned upon, the fulfillment of the following conditions precedent: . . . The Closing shall occur within forty-five (45) days after the entry of the

Confirmation Order but no later than January 31, 2020 (such January 31, 2020 date, as extended hereunder, the "Final Date"); provided, however, that Purchaser may extend such Final Date, on one or more occasions, until the earlier of 30 days after the entry of the Confirmation Order or January 31, 2021 by notice to Seller prior to the passing of the then effective Final Date.

19.     Following the entry of the Sale Order, the Debtor, on January 23, 2020, sent notice to 29 Beekman that the closing on the Townhouse would take place on January 31, 2020.  Toward that end, the Debtor took the steps needed to ensure that a closing could timely occur on January 31, 2020, including working with the title company (selected by 29 Beekman) to ensure all relevant documents were drafted and in an order.  Dr. Stmt. Facts at ¶ 32.  On January 29, 2020, rather than proceeding with the closing on January 31, 2020, 29 Beekman's counsel notified the Debtor of 29 Beekman's exercise of its right under Section 52(d) of the Purchase Agreement to extend the "Final Date" of the closing to February 10, 2020. After receiving 29 Beekman's notice, the Debtor's real estate counsel once again prepared for a closing with 29 Beekman including sending drafts of the Bargain and Sale Deed, the Bill of Sale and the Title Affidavit to 29 Beekman.  29 Beekman did not object to the form of these documents.  *Id*. at ¶ 33.

20.     On February 10, 2020, 29 Beekman failed to deliver the Purchase Price and failed to close.  *Id*. at ¶ 35.  Instead, 29 Beekman emailed the Debtor advising that it purported to exercise its right to extend the Final Date for that closing to May 10, 2020.  *Id*.  An extension to May 10, 2020, however, is not permitted under the express terms of the Purchase Agreement, as 29 Beekman had no right under the Purchase Agreement to extend the Final Date past February 15, 2020 (the date that is 30 days after entry of the Sale Order). *Id*. at ¶¶ 36-37.

21.     In response, 29 Beekman argues that the obligation to close by February 10, 2020 was only a condition precedent and did not impose an affirmative duty.  Thus, according to 29

Beekman, a failure to close by February 10 is incapable of constituting a breach of contract.  29 Beekman is incorrect.

22.     Here, the trail of correspondence demonstrates that the parties mutually believed that the Final Date was a fixed requirement that imposed a duty on the parties to act.  *See e.g.*, Herman Decl. Exs. C, D, I, J, K, R, and S.  Indeed, that was made evident by the dispute (and during the telephonic conference) as to whether the Sale Order could be modified by the Final Date.

23.     And, even if the Final Date did not impose an affirmative duty to close, 29 Beekman cannot take advantage of a condition precedent to excuse performance, where 29 Beekman itself rendered performance impossible. *Stern v. Gepo Realty Corp.*, 289 N.Y. 274, 277 (1942) (observing "one may not take advantage of a condition precedent, the performance of which he himself has rendered impossible."); *see also, Sibbald v. Bethlehem Iron Co.*, 83 N.Y. 378, 384 (1881); *Vandegrift v. Cowles Eng'g Co.*, 161 N.Y. 435, 443 (1900); *Gulf Oil Corp. v. Am. Louisiana Pipe Line Co.*, 282 F.2d 401, 404 (6th Cir. 1960) (finding failure of the condition cannot be utilized as a defense where the party resisting the contractual obligation has affirmatively acted to obviate its fulfillment).

24.     Here, after Pelmadulla filed its proof of claim, the Plan was no longer confirmable as a matter of law.  When the Debtor asked 29 Beekman for an extension of time to obtain a final order, 29 Beekman refused to grant such a request while simultaneously insisting, despite the language of the Purchase Agreement, it would only close through a chapter 11 plan.  Thus, 29 Beekman's actions created the impossibility to proceed with confirmation of a chapter 11 plan.  29 Beekman should not be permitted to benefit from the nonexistence of a condition precedent where it is alleged that it frustrated or prevented the occurrence of the condition. *See A.H.A. Gen. Const.*,

*Inc. v. New York City Hous. Auth.*, 92 N.Y.2d 20, 31 (1998). "A condition precedent is linked to the implied obligation of a party not to do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Id.*

25.     Moreover, even if the Final Date was a condition precedent, which it is not, the failure to perform a condition precedent may be construed as a breach of contract. Restatement (Second) of Contracts § 225 (1981).

   ii.   ***The Debtor satisfied its obligations under the Purchase Agreement***

26.     Section 13 of the Purchase Agreement lists the applicable closing conditions, and states:

> (a) This contract and Purchaser's obligation to purchase the Premises are also subject to, and conditioned upon, the fulfillment of the following conditions precedent:
>
>> (i) The accuracy, as of the date of Closing, of the representations and warranties of Seller made in this contract.
>>
>> (ii) Intentionally omitted.
>>
>> (iii) Intentionally omitted.
>>
>> (iv) The delivery of the Premises and all building(s) and improvements comprising a part thereof in broom clean condition (subject to all included personal property), vacant and free of leases or tenancies, together with keys to the Premises.
>>
>> (v) Intentionally omitted.
>
> (b) This contract, Purchaser's obligation to purchase the Premises and Seller's obligation to convey the Premises in accordance with this contract are also subject to, and conditioned upon, the fulfillment of the following conditions precedent:
>
>> (i) Delivery by the parties at Closing of affidavits in compliance with state and local law requirements to the

effect that there is installed in the Premises a smoke detecting alarm device or devices.

(ii) The delivery by the parties of any other affidavits required as a condition of recording the deed.

27.     Plaintiff has satisfied all of these obligations.

28.     In preparation for a closing on or before February 10, 2020, the Debtor undertook, among other things, the following: (a) Emailed with the title company to schedule appearance; (b) Obtained from the title company total amount of the tax liability required to be paid at closing; (c) Reviewed and/or prepared the required ancillary documents including (i) Affidavit of Compliance with Smoke Detector Requirement for One- and Two-Family Dwellings, (ii) Customer Registration Form for Water and Sewer Billing, and (iii) Real Property Transfer Tax Return; (d) Prepared the Bargain and Sale Deed; (e) Prepared the Bill of Sale; and (f) Prepared the Title Affidavit.

29.     Additionally, all representations and warranties of Plaintiff were true and accurate. 29 Beekman's assertion that the Debtor breached the Purchase Agreement by misrepresenting that, at the time of execution of the Purchase Agreement "that the net proceeds of a sale under this Contract would be sufficient to satisfy all claims against Seller, and as *reasonably projected*, Seller's contemplated estate in bankruptcy" is incorrect.

30.     *First*, the representation in the Purchase Agreement that the sale price was reasonably projected to pay all creditors in the bankruptcy case is not a "flat footed" or "stand alone" clause.  Rather, that sentence is only part of section 51(b) and sandwiched between sentences pertaining to Debtor's submission of the Purchase Agreement to the Bankruptcy Court for approval as a private sale without an auction.[5]  29 Beekman suggests that the intent of the

_____

[5] Section 51(b) of the Purchase Agreement provides:

contract was to permit it to buy the Townhouse under a bankruptcy plan without having to pay a mansion tax, and that it was not required to close if it would have to incur a mansion tax. This cannot be correct, as express provisions in the Purchase Agreement require 29 Beekman to buy the Townhouse even if no bankruptcy were ever filed and even if a bankruptcy case were filed but dismissed. See Purchase Agreement at ¶ 40 ("Purchaser shall be responsible for the NYS and NYC 'Mansion Tax.'"). So not being required to pay the Mansion Tax was never a requirement to get to a closing. Similarly, there is not a single clause in the Purchase Agreement that requires Debtor to pay a mansion tax, under any set of circumstances! As a matter of law, in the absence of an exemption of some sort, 29 Beekman is required to pay this tax. N.Y. Tax Law § 1402-a.

31. It is an elementary rule of contract construction that clauses of a contract should be read together contextually in order to give them meaning. *HSBC Bank USA v. National Equity Corp.*, 279 A.D.2d 251, 253 (1st Dep't 2001). A construction of a contract which makes a contract provision meaningless is contrary to basic principles of contract interpretation. *Columbus Park Corp. v. Department of Housing Preservation and Dev.*, 80 N.Y.2d 19, 31 (1992). Here, 29 Beekman got the benefit of the bargain – a seller ready, willing and able to deliver title pursuant to a fully enforceable bankruptcy court order.

---

Seller shall petition the Bankruptcy Court to approve the sale of the Premises under this Contract, i.e., for **clarity, without seeking any other offers, bids or proposals, and shall not propose or request any auction**. Seller represents that the net proceeds of a sale under this Contract would be sufficient to satisfy all claims against Seller and, **as reasonably projected**, Seller's contemplated estate in bankruptcy, **and Seller shall present the Contract for approval by the Bankruptcy Court in such context**. . . . **If, despite Seller's petition described herein, the Bankruptcy Court orders an auction** or if any higher offer is made that the Bankruptcy Court accepts, or if the Bankruptcy Court proceeding is dismissed without approval of the sale under this Contract. . . . This Section 51(b) shall survive termination of this Contract.

32.     After 29 Beekman announced its refusal to extend the January 31, 2020 deadline for a closing pursuant to an order that was no longer subject to appeal or a motion to reargue, in a January 15, 2020 letter, it was not possible for Debtor to sell the Townhouse to 29 Beekman pursuant to an order confirming a plan of reorganization that would not be subject to appeal or a motion to reargue by January 31, 2020.  Had Beekman chosen to extend the deadline, the Debtor could have filed and confirmed a plan of reorganization.  Due to the choice 29 Beekman made, the Debtor was required to pivot to a 363-sale transaction.  Thus, the Debtor sought and obtained entry of the Sale Order, which provides for the private sale of the Townhouse to 29 Beekman, free and clear of liens and claims, without an auction.  29 Beekman was afforded the benefit of the bargain under the Purchase Agreement, but it refused to close, in breach of the Purchase Agreement.  Similarly, if there was no pending bankruptcy case, and the Debtor was able to deliver title, 29 Beekman would have been required to close under the Purchase Agreement.  In no scenario under the Purchase Agreement, is the Debtor ever required to pay the Mansion Tax, but 29 Beekman is always required to close.

33.     *Second*, at the time of execution, the Debtor *reasonably projected* that all of the Purchase Price was sufficient to pay all creditors in full because it had no knowledge of Pelmadulla's claim.

34.     Debtor did not make any misrepresentations and to infer otherwise begs credibility in any construct.  Why?  The best economic outcome, and the one the Debtor was aiming for in this case in its self-interest was the confirmation of a plan with a closing ASAP, to enable the Debtor to benefit both by stopping the accrual of carrying costs and by saving on the transfer taxes.

14

a. **All defaults under the Purchase Agreement that may have arisen prior to entry of the Sale Order are barred by entry of the Sale Order**

35.     When a bankruptcy court approves the assumption of an executory contract, including purchase and sale agreements, it necessarily finds that no uncured defaults exist. *In re Cellnet Data Sys., Inc.*, 313 B.R. 604 (Bankr. D. Del. 2004), *supplemented,* No. 00-00844(PJW), 2005 WL 1331257 (Bankr. D. Del. June 6, 2005); *In re Lykes Bros. S.S. Co., Inc.*, 221 B.R. 881, 883 (Bankr. M.D. Fla. 1997) ("If prior to the assumption of any executory contract there is no allegation of any existing default, the order approving the contract determines that no default exists."); *In re Diamond Mfg. Co., Inc.*, 164 B.R. 189, 197 (Bankr. S.D. Ga. 1994); *NCL Corp. v. Lone Star Bldg. Centers (E.) Inc.*, 144 B.R. 170, 179 (S.D. Fla. 1992). Thus, "[t]he nonbankrupt party [to an executory contract] bears [the] burden to assert any defaults prior to the assumption." *In re Diamond Mfg. Co., Inc.*, 164 B.R. at 199. Where the nonbankrupt party has knowledge of facts sufficient to place the party on notice that a "potential" pre-confirmation breach has occurred, res judicata bars that party from later asserting a claim based upon the pre-petition breach. *Id.* at 201.

36.     Here, 29 Beekman had knowledge of the sale and appeared, by counsel of record, at the hearing approving the Sale Motion.  29 Beekman did not file an objection to the Sale Motion and did not raise any objections or allege any breaches at the hearing.  As a result, the Court found that "[p]ursuant to section 365 of the Bankruptcy Code, the Debtor's assumption of the Purchase Agreement is hereby approved."   And, in approving the assumption, the Court found that the "Purchase Agreement and this Order was negotiated by the Debtor and the Purchaser at arm's length, without collusion or fraud, and in good faith within the meaning [of] section 363(m) of the Bankruptcy Code."

37.     By failing to timely object, alleged defaults may have arisen prior to entry of the Sale Order are barred by entry of the Sale Order, under the doctrine of res judicata, waiver and/or estoppel. *See generally In re Cult Awareness Network, Inc.*, 151 F.3d 605, 610 (7th Cir. 1998) (creditors waive arguments by failing to object to sale); *In re Elliot*, 94 B.R. 343, 345–46 (E.D. Pa. 1988) (same); *In re Colarusso*, 280 B.R. 548, 559 (Bankr. D. Mass. 2002), *aff'd*, 295 B.R. 166 (B.A.P. 1st Cir. 2003), *aff'd*, 382 F.3d 51 (1st Cir. 2004) (party with interest in property sold under Section 363 waives any objections and consents to sale by failure to object); *In re Sapolin Paints, Inc.*, 20 B.R. 497, 509 (Bankr. E.D.N.Y. 1982) (lessor waived objections to assumption and assignment of lease by failing to object).  Indeed, the Sale Order made clear that:

> Any objections to the entry of this Order or the relief granted herein and requested in the Motion that have not been withdrawn, waived, settled, or otherwise resolved as set forth on the record at the Hearing and/or memorialized pursuant to the terms hereof (if any) hereby are denied and overruled on the merits with prejudice.

38.     Prior to the entry of the Sale Order, and approval of the Sale Motion, 29 Beekman was fully aware of Pelmadulla's proof of claim, filed on December 31, 2019.  29 Beekman, however, did not raised the issue of a breach, by virtue of a fraud or misrepresentation at the either the January 14th or January 16th hearing on the motion for approval of the sale and assumption of the Purchase Agreement. And, on January 17, 2020, one day after the entry of the Sale Order, during an emergency telephone conference with the Court requested by 29 Beekman on the terms of the Sale Order, 29 Beekman again did not complain of any misrepresentations and did not object to either the finding that all objections have been waived or overruled or that the Purchase Agreement was entered without fraud or collusion in an arms' length transaction.

39.     It is clear from 29 Beekman's conduct that after obtaining an unfavorable ruling, 29 Beekman manufactured specious arguments in a quixotic attempt to avoid its obligations to

close under the Purchase Agreement, as approved by the Sale Order. 29 Beekman's buyer's remorse and unhappiness with the negotiated sale terms, however, is not enough to revisit judicially resolved issues and does not give rise to a claim of fraud. *Matter of Met-L-Wood Corp.*, 861 F.2d 1012, 1018 (7th Cir. 1988) (dismissing successor trustee's fraud action for damages against the debtor and purchaser at 363 sale and others as "a thinly disguised collateral attack on the judgment confirming by the sale" which was barred by res judicata); *In re Garfinkle*, 672 F.2d 1340 (11th Cir. 1982) (sale order cannot be collaterally attacked); *Barton v. Lawrence Grp., Inc.*, 262 B.R. 26 (N.D.N.Y. 2000), *vacated sub nom. In re Lawrence*, 293 F.3d 615 (2d Cir. 2002) (Section 363 sale order cannot be collaterally attacked); *Miller v. Meinhard–Commercial Corp.*, 462 F.2d 358, 360 (5th Cir. 1972) ("[e]ven though an action has an independent purpose and contemplates some other relief, it is a collateral attack if it must in some fashion overrule a previous judgment.").

40. 29 Beekman's refusal to close and its litigation tactics since entry of the Sale Order constitute nothing more than a collateral attack on the Sale Order and an assault on the authority of this court to administer its cases. *Miller*, 462 F.2d at 360; *Met-L-Wood Corp.*, 861 F.2s at 1018; *In re Berry Pub. Servs., Inc.*, 231 B.R. 676, 681 (Bankr. N.D. Ill. 1999) (holding allegations of improper conduct related to the sale must be raised prior to entry of an order approving the sale and sale orders cannot be collateral attacked).

41. Yes, parties are entitled to procedural due process, but they do not have the right to suborn the process by first participating in the process and then collaterally attacking it when they don't like the outcome. Here, Defendant had notice of all of the relevant hearings and deadlines, and Defendant's counsel was present in Court for the hearings on the Sale Motion. The Debtor is not responsible for the litigation tactics employed by Defendant, including its decisions not to

object to the Sale Motion or to address the Court at the right time. Conversely, the Debtor is entitled to rely on the regular conduct of business by the Court and orders of the Court entered when procedural due process has been satisfied, where, as here, an order has been entered upon appropriate notice and after opposing parties have had an opportunity to be heard.

b. **The Debtor did commit fraud or make any material misrepresentations**

42.     To manufacture a breach by the Debtor, 29 Beekman argues the Debtor knew of Pelmadulla's unsecured claim at the time of the execution of the Purchase Agreement, because the Debtor and Pelmadulla are essentially alter egos.   To support its spurious claim, Defendant contends that the Debtor fraudulently conspired with and concealed Pelmadulla's proof of claim or should have known based on the "sole actor rule," despite the fact that the Court found in the Sale Order that the Purchase Agreement was negotiated *without any fraud*.

43.     *First*, 29 Beekman does not provide – and cannot provide – a scintilla of evidence to suggest that the Debtor has participated in any fraud.  As stated above, the Debtor had everything to gain by confirming a plan and closing, without delay.  The surprise filing of the Pelmadulla claim was equally unwelcome and unexpected.

44.     *Second*, the sole actor rule is inapplicable to this case and a red herring.  The sole actor rule is an exception to the adverse interest exception to the Wagoner rule.  The sole actor rule comes into play where the wrongdoer is, in essence, the corporation (the "sole actor"). Indeed, it has its roots in cases where the agent and the principal are literally the same person (literally a "sole actor") and thus information obtained by a person in his role as an agent is treated as also being obtained in his role as principal, even if his activities as agent are contrary to his interests as a principal. In the corporate context, the rule applies where "the principal is a corporation and the agent is its sole shareholder." *In re CBI Holding Co., Inc.*, 529 F.3d 432, 453 (2d Cir. 2008).

45.     The sole actor exception has been invoked in this Circuit only where an individual malefactor is the sole shareholder or the person who exercises complete, unfettered control over the entity. See *Breeden v. Kirkpatrick & Lockhart, LLP*, 268 B.R. 704, 709 (S.D.N.Y. 2001), *aff'd sub nom. In re Bennett Funding Grp., Inc.*, 336 F.3d 94 (2d Cir. 2003) ("The sole actor rule applies where the corporate principal and its agent are indistinguishable, such as where the agent is a corporation's sole shareholder, or where the corporation bestows upon its agent unfettered control and allows the agent to operate without meaningful supervision with respect to a particular type of transaction.").

46.     Clearly, here, the sole actor rule is inapplicable because Pelmadulla, as the sole shareholder, does not manage the day to day activities of the Debtor and is not an "agent" of the Debtor. And, the Debtor contracted with 29 Beekman, not as an agent for Pelmadulla, but on its own behalf. Thus, not only are the Debtor and Pelmadulla distinguishable here, neither Pelmadulla nor the Debtor was acting as an agent for the other in connection with Purchase Agreement, Plan, or with respect to this bankruptcy case. 29 Beekman, however, disagrees and asserts that a sole shareholder is always inputted with the knowledge of its agent. To support its argument, 29 Beekman cherry picks quotes from caselaw all of which are factually distinguishable from this case and, accordingly, must be rejected. For example, in *Mediators, Inc. v. Manney (In re Mediators, Inc.)*, 105 F.3d 822, 827 (2d Cir. 1997) the corporation's sole shareholder was also the chief executive officer and chairman.[6] Obviously, as set forth above, that is not the case here.

---

[6] Furthermore, 29 Beekman's reliance on *Trott* for the proposition that a Debtor is inputted with knowledge of the sole shareholder, even if it did not exercise complete domination is misplaced. *Trott v. Platinum Mgmt. (NY) LLC (In re Platinum-Beechwood Litig.)*, No. 18-CV-10936 (JSR), 2019 WL 2569653, at *17 (S.D.N.Y. June 21, 2019), *reconsideration denied*, 400 F. Supp. 3d 2 (S.D.N.Y. 2019). That quote in *Trott* related a claim of aiding and abetting and unjust enrichment not a claim for breach of contract.

### iii. *The Debtor has suffered damages*

47.    Plaintiff's complaint sufficiently pled,[7] and the undisputed facts support, that the Debtor has suffered damages.  Here, the Debtor has pled as follows:

    a.    The Debtor is suffering ongoing damages in the amount of the costs being incurred as a direct result of the Debtor's continued ownership of the Townhouse. Complaint, at ¶ 3.

    b.    Paragraph 20 of the Purchase Agreement provides, in relevant part, that the Debtor's remedy for Defendant's failure to perform under the Purchase Agreement, "shall be to receive and retain the Downpayment as liquidated damages, it being agreed that Seller's damages in case of Purchaser's default might be impossible to ascertain and that the Downpayment constitutes a fair and reasonable amount of damages under the circumstances and is not a penalty." Complaint, at ¶ 19.

    c.    The Debtor has suffered, and continues to suffer, damages from Defendant's failure to pay the Purchase Price and close on the sale of the Townhouse. Complaint, at ¶ 85.

    d.    Liquidated damages are proper because the parties agreed in the Purchase Agreement that it was impracticable to fix actual damages the Debtor's actual damages in the event of 29 Beekman's default, and that the Downpayment is a fair and reasonable amount of the Debtor's damages. Complaint, at ¶ 87.

48.    Indeed, as a result of 29 Beekman's default, the Debtor remains in a precarious position.  The Debtor continues to accrue substantial carrying costs on the Townhouse, default rate of interest on its mortgage and real estate taxes, while it is not generating any incoming revenue.

---

[7] *See, e.g., Rodriguez v. State Farm Mut. Auto. Ins. Co.*, No. 1:13-CV-21386-DLG, 2013 WL 12064853, at *2 (S.D. Fla. June 18, 2013) (denying carrier's motion to dismiss complaint, finding allegation that "Plaintiff has suffered damages" "as a result of the breach" was sufficient to state damages element of breach of contract claim); *Medytox Diagnostics, Inc. v. Samuels*, No. 14-CIV-20719, 2014 WL 12606310, at *5 (S.D. Fla. July 18, 2014) (denying motion to dismiss complaint, finding allegation that plaintiff "suffered damage as a result" of the alleged contract breach was sufficient to state damages element of breach of contract claim; "Plaintiffs have pleaded they were damaged as a result of the breach, which is accepted as true at the motion to dismiss stage"); *Yacht Club on the Intracoastal Condo. Ass'n, Inc. v. Lexington Ins. Co.*, No. 10-81397-CIV, 2010 WL 11561157, at *1 (S.D. Fla. Nov. 30, 2010) (denying carrier's motion to dismiss amended complaint, finding allegation that plaintiff "has suffered general compensatory damages" was sufficient to state damages element of breach of contract claim and specific enough "to enable the defendant to formulate an intelligible answer").

Accordingly, the Debtor has pled and suffered damages from 29 Beekman's breach of the Purchase Agreement.

B.   **The Debtor is entitled to summary judgment declaring the Downpayment is property of the estate and Defendant relinquished its interest in the Downpayment**

49.   "In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941).

50.   The decision to grant declaratory relief "is informed by two primary considerations: (1) whether the judgment will serve a useful purpose in clarifying and settling the legal issues involved; and (2) whether it would finalize the controversy and offer relief from uncertainty." *Barbu v. Life Ins. Co. of N. Am.*, No. 12-cv-1629, 2013 U.S. Dist. LEXIS 178611, at *9-10 (E.D.N.Y. Dec. 19, 2013) (citing *Broadview Chem. Corp. v. Loctite Corp.*, 417 F.2d 998, 1001 (2d Cir. 1969)). This standard is plainly met here.

51.   Here, an actual controversy exists between the parties. Indeed, the legal dispute between the parties is clearly delineated:  the Debtor and 29 Beekman each claim entitlement to the Downpayment under the express terms of the Purchase Agreement.  Dr. Stmt. Facts at ¶ 4. Under these circumstances, "there is nothing hypothetical or speculative about this dispute; rather, the dispute is 'real and substantial and admit[s] of specific relief through a decree of a conclusive character' . . . 'as distinguished from an opinion advising what the law would be upon a

hypothetical set of facts.'" *Amazon.com, Inc. v. Nat'l Ass'n of Coll. Stores, Inc.*, 826 F. Supp. 2d 1242, 1249 (W.D. Wash. 2011) (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)).

52. As set forth in the Complaint and documentary evidence in support of the Motion to Dismiss, the Debtor has adduced sufficient unrefuted evidence to establish, without genuine dispute, that the Debtor is entitled to retain the Downpayment and that the Escrowee can be directed to transfer the Downpayment to the Debtor's bank account. Paragraph 20 of the Purchase Agreement provides, in relevant part, that the Debtor's remedy for 29 Beekman's failure to perform under the Purchase Agreement, "shall be to receive and retain the Downpayment as liquidated damages, it being agreed that Seller's damages in case of Purchaser's default might be impossible to ascertain and that the Downpayment constitutes a fair and reasonable amount of damages under the circumstances and is not a penalty." Purchase Agreement at ¶ 20. As set forth above, 29 Beekman breached the Purchase Agreement.

53. Accordingly, the Debtor is entitled to retain the Downpayment.

II. **THE AMENDED COMPLAINT SATISFIES THE REQUIREMENTS OF FED. R. CIV. P. 12(b)(6)**

54. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *accord Twombly*, 550 U.S. at 556. Determining whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

55. Thus, in order to survive a Rule 12(b)(6) motion, a complaint must contain "enough factual matter (taken as true)" to "raise [the] right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Detailed factual allegations are not necessary. *In re Saba Enterprises, Inc.*, 421 B.R. 626, 646 (Bankr. S.D.N.Y. 2009) (finding under *Twombly* that, in the constructive fraudulent transfer context, the plaintiff does not need to plead specific facts to support the relevant allegations).

A.     **The Complaint Sets forth Detailed Allegations of Defendant's Breach of Contract**

56.     Under New York law, to establish a breach of contract a plaintiff must plead the following elements: (i) the existence of a contract; (ii) breach by the other party; and (iii) damages suffered as a result of the breach. *See Terwilliger v. Terwilliger*, 206 F.3d 240, 245–46 (2d Cir. 2000). In pleading these elements, a plaintiff must identify what provisions of the contract were breached as a result of the acts at issue. *See Levy v. Bessemer Trust Co., N.A.*, 1997 U.S. Dist LEXIS 11056, No. 97 Civ. 1785, *5 (S.D.N.Y. July 30, 1997).

57.     The Motion to Dismiss essentially requests that the Court disregard the well-pled allegations of breach, and rule as a matter of law that no breach occurred because the Debtor breached is obligations under the contract first. Defendant's argument ignores the factual realities of this case and misinterprets the applicable case law. The Complaint clearly and unambiguously identifies facts sufficient to support each of these three elements. As set forth above, and in the Complaint, among other facts, the following facts support the Debtor's claim:

a.     The parties entered into a contract entitled *Residential Contract of Sale*. Compl. at ¶ 16, Compl. Exhibit A.

b.     29 Beekman breached the contract by anticipatorily repudiating its obligations. Compl. at ¶¶ 40-60.

23

  c.  29 Beekman failed to timely close by paying the Purchase Price. Compl. at ¶ 57.

  d.  The Debtor complied with all of its obligations under the Purchase Agreement. Compl. at ¶¶ 43 and 53-56.

  e.  The Debtor suffered and continues to suffer damages from 29 Beekman's default. Compl. at ¶¶ 86-88.

58.  Accordingly, the Debtor has adequately stated a claim for a breach of contract.

B.  **<u>The Debtor Adequate Pled a Claim for a Declaratory Judgment</u>**

59.  To properly plead a claim for a declaratory judgment, a plaintiff must demonstrate that the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc.*, 549 U.S. at 127. Thus, to plead a declaratory judgment cause of action a plaintiff must provide facts sufficient to show that the parties "have or reasonably may have an actual, present, adverse, and antagonistic interest in the subject matter, either in fact or law." *Coal. for Adequacy & Fairness in Sch. Funding, Inc. v. Chiles*, 680 So. 2d 400, 404 (Fla. 1996); see *Malowney v. Fed. Collection Deposit Grp.*, 193 F.3d 1342, 1347 (11th Cir. 1999) (explaining that claim for declaratory judgment is properly pled when it alleges facts showing that there is a "substantial continuing controversy between two adverse parties").

60.  The second cause of action asserts that actual, substantial and justiciable controversy exists and the existence of a concrete, real, and immediate dispute between the parties over the interest in the Downpayment. As such, it sufficiently states a cause of action against 29 Beekman.

## <u>CONCLUSION</u>

WHEREFORE, the Debtor respectfully requests that the (a) the motion for summary judgment be granted, (b) the Motion to Dismiss be denied in its entirety, and (c) the Debtor be granted such other and further relief as is just and proper.

Dated: New York, New York
      April 8, 2020

**BLANK ROME LLP**

By:    <u>/s/ Ira L. Herman</u>
        Ira L. Herman
        Evan J. Zucker
1271 Avenue of the Americas
New York, NY 10020
Tel:  212-885-5000
Fax:  212-885-5001

*Special Litigation Counsel for Plaintiff*