UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------X
In re:                                                   :
                                                         :
WANSDOWN PROPERTIES CORPORATION   :
N.V.,                                                    :
                                                         :          Chapter 11
                                                         :          Case No. 19-13223 (SMB)
                        Debtor.                          :
---------------------------------------------------------X
                                                         :
WANSDOWN PROPERTIES CORPORATION   :
N.V.,                                                    :
                                                         :
                        Plaintiff,                       :
                                                         :
                     - against -                         :
                                                         :          Adv. Pro. No. 20-01056 (SMB)
29 BEEKMAN CORP.,                                        :
                                                         :
                        Defendant.                       :
---------------------------------------------------------X

## MEMORANDUM DECISION AND ORDER
## GRANTING IN PART AND DENYING IN
## PART MOTION FOR RECONSIDERATION

**A P P E A R A N C E S :**

BLANK ROME LLP
1271 Avenue of the Americas
New York, New York 10020

  Ira L. Herman, Esq.
  Evan J. Zucker, Esq.
   Of Counsel

*Special Litigation Counsel for Plaintiff*

THE SERBAGI LAW FIRM
488 Madison Avenue, Suite 1120
New York, New York 10022

  Christopher Serbagi, Esq.
   Of Counsel

*Attorney for Defendant*

**STUART M. BERNSTEIN**
**United States Bankruptcy Judge:**

This adversary proceeding concerns a dispute over the right to the downpayment

("Downpayment") given by the defendant-buyer ("Beekman") to the plaintiff-seller

("Debtor") in connection with an unconsummated Purchase Agreement[1] to buy real

property (the "Townhouse") owned by the Debtor.  In *Wansdown Props. Corp. N.V. v.*

*29 Beekman Corp.* (*In re Wansdown Props. Corp. N.V.*), 620 B.R. 487 (Bankr. S.D.N.Y.

2020) ("*Decision*"), the Court denied the parties' cross-motions for summary judgment

and identified two factual issues.  First, the Purchase Agreement ¶ 51(b) stated that

"Seller represents that the net proceeds of a sale under this Contract would be sufficient

to satisfy all claims against Seller and, as reasonably projected, Seller's contemplated

estate in bankruptcy" (the "Proceeds Representation").  The Proceeds Representation

had to be true and correct at closing, (Purchase Agreement ¶ 13(a)(i)), which had been

adjourned to February 10, 2020.  The closing never occurred as a result of Beekman's

breach, subject, however, to the proviso that Beekman's obligation to close was not

excused by the failure of the condition, to wit, the truth of the Proceeds Representation

at the time of closing.  *Decision*, 620 B.R. at 503.  In this regard, the Court ruled that the

phrase "as reasonably projected" in the Proceeds Representation was inherently

ambiguous.  *Id.* at 504.

Second, if the Debtor could not satisfy the Proceeds Representation at closing,

"would the enforcement of the condition cause a disproportionate forfeiture to the

---

[1]    A copy of the Purchase Agreement is annexed as Exhibit A to the *Declaration of Ira L. Herman in Support of Plaintiff's Motion for Summary Judgment*, dated Apr. 8, 2020 ("*Herman Declaration*") (ECF Doc. # 14).

Debtor." *Id.* On the one hand, if the condition was not excused, the Debtor and its

creditors would forfeit the Downpayment. On the other hand, the Debtor sold the

Townhouse to another buyer following Beekman's breach for significantly more than

Beekman had agreed to pay. On a related point, the Court also questioned the

materiality of the Proceeds Representation. Thus, the extent of the forfeiture raised a

factual question. *Id.* The parties made a host of other arguments, and to the extent that

the Court did not expressly address them, stated that it had "considered the parties'

remaining arguments and concludes that they are without merit." *Id.* at 505.

Beekman has now moved for reconsideration, (*29 Beekman's Motion for

Reconsideration on Denial of Its Cross-Motion for Summary Judgment*, dated Oct. 19,

2020 ("*Motion*") (ECF Doc. # 63); *see also 29 Beekman's Reply Memorandum of Law

in Support of Its Motion for Reconsideration on Denial of Its Cross-Motion for

Summary Judgment,* dated Nov. 16, 2020 ("*Reply*") (ECF Doc. # 72)), which the Debtor

opposes. (*See Opposition of Wansdown Properties Corporation N.V. to 29 Beekman's

Motion for Reconsideration on Denial of Its Cross-Motion for Summary Judgment*,

("*Opposition*"), dated Nov. 4, 2020 (ECF Doc. # 70).) The *Motion* identifies numerous

purported errors in the *Decision* that require reconsideration. For the reasons that

follow, the Court grants reconsideration in connection with the issue concerning

disproportionate forfeiture and otherwise denies the *Motion*.

# DISCUSSION

## A.    Standard Governing the *Motion*

A motion for reargument or reconsideration is governed by Local Bankruptcy Rule ("LBR") 9023-1.[2]  "The movant must show that the court overlooked controlling decisions or factual matters that might have materially influenced its earlier decision." *In re Asia Glob. Crossing, Ltd.*, 332 B.R. 520, 524 (Bankr. S.D.N.Y. 2005) (internal quotation marks omitted).  Alternatively, the movant must demonstrate "the need to correct a clear error or prevent manifest injustice."  *Perez v. Progenics Pharms., Inc.*, 46 F. Supp. 3d 310, 314 (S.D.N.Y. 2014); *accord In re Asia Glob. Crossing, Ltd.*, 332 B.R. at 524.  A manifest injustice exists when a "verdict is wholly without legal support," *ING Glob. v. United Parcel Serv. Oasis Supply Corp.*, 757 F.3d 92, 97 (2d Cir. 2014), and the error is obvious to all who view it.  *Green Goblin, Inc. v. Simons* (*In re Green Goblin, Inc.*), Adv. No. 09-067, 2012 WL 1971143, at *1 n.2 (Bankr. E.D. Pa. May 31, 2012), *aff'd*, Civ. No. 12-4076, 2014 WL 5800601 (E.D. Pa. Nov. 6, 2014).  "These criteria are strictly construed against the moving party so as to avoid repetitive arguments on issues that have been considered fully by the court," *Griffin Indus., Inc. v. Petrojam, Ltd.*, 72 F. Supp. 2d 365, 368 (S.D.N.Y. 1999); *accord Liberty Media Corp. v. Vivendi Universal, S.A.*, 861 F. Supp. 2d 262, 265 (S.D.N.Y. 2012), and a motion for reargument is not an

---

[2]     LBR 9023-1(a) states:

A motion for reargument of a court order determining a motion must be served within fourteen (14) days after the entry of the Court's order determining the original motion, or in the case of a court order resulting in a judgment, within fourteen (14) days after the entry of the judgment, and, unless the Court orders otherwise, shall be made returnable within the same amount of time as required for the original motion.  The motion must set forth concisely the matters or controlling decisions which counsel believes the Court has not considered.  No oral argument shall be heard unless the Court grants the motion and specifically orders that the matter be re-argued orally.

opportunity to present the case under new theories, secure a rehearing on the merits, or otherwise take a "second bite at the apple." *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998); *see also Liberty Media Corp.*, 861 F. Supp. 2d at 265 ("A motion for reconsideration is not an opportunity for making new arguments that could have been previously advanced, nor is it a substitute for appeal.") (citations and internal quotation marks omitted).

## B.    Admissions

Several of the arguments raised by Beekman center on so-called admissions, "deemed admissions," or "judicial admissions" by the Debtor that the Court supposedly ignored.  Beekman argues at various points that the Debtor judicially admitted that the sufficiency of proceeds was a material condition precedent when it failed to properly respond to *29 Beekman's Statement of Undisputed Facts in Support of Its Cross-Motion for Summary Judgment*, dated May 7, 2020 ("SOF") (ECF Doc. # 29).  (*Motion* at 7-13.)  Furthermore, the law of judicial admissions does not permit the Debtor to now take the inconsistent position that it should be excused from the condition it had argued it fulfilled.  (*Motion* at 16-18.)  In addition, the Debtor never took the position that the Proceeds Representation was ambiguous, and the Court's conclusion would change the law of judicial admissions because Debtor already repeatedly argued that it understood the language perfectly well and had fulfilled the language.  (*Motion* at 18-19.)

Beekman's argument confuses "judicial admissions," "judicial estoppel," and "deemed admissions."  "Judicial admissions are . . . 'formal concessions . . . by a party or counsel that have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact.  Thus, a judicial admission . . . is conclusive in the case.'"

5

*Hoodho v. Holder*, 558 F.3d 184, 191 (2d Cir. 2009) (quoting 2 MCCORMICK ON EVID. § 254 (6th ed. 2006)). Hence, "judicial admissions" concern conceded facts and their proof. "Judicial estoppel," on the other hand, prevents a party in certain circumstances from changing positions or arguments and protects the integrity of the judicial process. *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001). Courts generally recognize three elements: (i) "a party's later position must be clearly inconsistent with its earlier position"; (ii) a court accepted the "earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled"; and (iii) "the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* at 750-51 (internal quotation marks and citations omitted). Finally, "deemed admissions" in this case relate to the operation of Rule 56 of the Federal Rules of Civil Procedure ("Rule 56"), made applicable to this adversary proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure, discussed in more detail below.

That the Debtor argued that the Purchase Agreement is unambiguous does not give rise to a "judicial admission." Ambiguity is a question of law, not fact, so it cannot support a "judicial admission," *see* Decision, 620 B.R. at 499, and the Court rejected the position, so it does not give rise to "judicial estoppel." Moreover, that both parties moved for summary judgment does not prevent the Court from concluding that there are issues of fact precluding summary judgment.[3] *Union Ins. Soc'y of Canton, Ltd. v.*

---

[3]    As a corollary, the Court did not play favorites or unfairly help the Debtor, as Beekman contends, by *sua sponte* raising issues regarding its entitlement to summary judgment. (*Reply* at ¶ 20 ("Respectfully, there has also been a basic unfairness here and favoritism toward Debtor, which has been provided incredible and unwarranted assistance by the Court.").) A Court does not assist a party or play

*William Gluckin & Co., Inc.,* 353 F.2d 946, 950 (2d Cir. 1965) ("The case cannot be taken from the trier of fact simply because 'The lawyers for the respective parties, by the cross-motions (for summary judgment), superinduced the idea that no factual questions were involved.'") (citation omitted); *cf. Vermont Teddy Bear Co. v. 1-800 BEARGRAM Co.*, 373 F.3d 241, 242 (2d Cir. 2004) ("We hold that Fed. R. Civ. P. 56, governing summary judgment motions, does not embrace default judgment principles. Even when a motion for summary judgment is unopposed, the district court is not relieved of its duty to decide whether the movant is entitled to judgment as a matter of law."). Similarly, the Debtor's position that it had complied with all conditions to closing and was ready, willing, and able to close is not a concession of fact or a position on which it prevailed.

### C.    "Deemed Admissions"

The main thrust of Beekman's "admissions" argument is based on the Debtor's purported failure to respond to Beekman's statement of undisputed facts. Under Rule 56, the party moving for summary judgment must cite to evidence in the record supporting the facts it claims are undisputed. FED. R. CIV. P. 56(c). To facilitate consideration of the motion, LBR 7056-1 requires the movant to annex "a separate, short, and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried," LBR 7056-1(b), *i.e.*, the SOF, "followed by citation to evidence which would be admissible." *Id.*, 7056-1(e).

---

favorites by spotting relevant and material issues of fact or law that the parties failed to raise or inadequately briefed. The Court's goal is to get it right.

Assuming the movant complies with these rules, the respondent on the motion sits idle at its peril. If the respondent fails to "properly address" the movant's assertion of fact, the Court may give the respondent another opportunity, deem the fact undisputed for purposes of the motion, grant summary judgment if the undisputed facts show the movant is entitled to summary judgment, or issue any appropriate order. FED. R. CIV. P. 56(e). The respondent's opposition papers must "include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short, and concise statement of additional material facts as to which it is contended that there is a genuine issue to be tried," LBR 7056-1(c), again "followed by citation to evidence which would be admissible." *Id.*, 7056-1(e). If the respondent fails to respond appropriately, each numbered paragraph in the movant's statement "shall be deemed admitted for purposes of the motion." *Id.*, 7056-1(d).

As noted, it is the movant's burden to support its statement of undisputed facts with citations to admissible evidence. In addition to or as an alternative to responding with a counter-factual statement, the respondent can object to the admissibility of the supporting evidence in the movant's statement to the same extent that it could at trial. FED. R. CIV. P. 56(c)(2); 11 MOORE'S FEDERAL PRACTICE - CIVIL § 56.91[3] (3d ed. 2020) ("MOORE"). If the cited evidence is inadmissible, the movant has not satisfied its burden.

Beekman's SOF consisted of fifty-one separate paragraphs. The *Motion* focuses on paragraphs 1-4, 10-12, 18-21, and 27, (*see Motion* at 10-13), and I limit the discussion to those paragraphs. With two exceptions discussed below, these paragraphs relate to

the contract negotiations — who said what to whom — and are supported with references
to the accompanying *Declaration of Seth Akabas*, dated May 7, 2020 (ECF Doc. # 24).
Mr. Akabas represented Beekman in the negotiations leading to the execution of the
Purchase Agreement.

The Debtor responded to each of these paragraphs with the following or some
minor variation of the following:

> The Purchase Agreement is an integrated contract that completely
> expresses the full agreement of the parties, including the subject matter of
> SOF [paragraph number], and all prior understandings, agreements,
> representations and warranties, oral or written, between Seller and
> Purchaser are merged into the Purchase Agreement. . . .  SOF [paragraph
> number] is based on inadmissible parole [sic] evidence of prior or
> contemporaneous negotiations or agreements offered to vary, modify, or
> contradict the provisions of the Purchase Agreement.  Further responding,
> SOF [paragraph number] is based on inadmissible hearsay evidence."

(*Wansdown Properties Corporation N.V.'s Counterstatement of Material Facts in
Response to 29 Beekman's Statement of Undisputed Facts in Support of Its Cross-
Motion for Summary Judgment*, dated June 8, 2020 ("Counter SOF") (internal
citations to record omitted) (ECF Doc. # 36).)  In other words, the Debtor objected to
the supporting evidence — Mr. Akabas' Declaration — based on the parol evidence rule
and hearsay.

Beekman contends that the Debtor's Counter SOF failed to comply with LBR
7056-1,[4] the Debtor is deemed to have admitted the facts, and "[t]hose admitted facts
end the case." (*Motion* at 5.)  The relevant portions of the SOF and supporting evidence
discussed in the *Decision* related to Beekman's contention that the parties had agreed to

---

[4]    Beekman incorrectly relies on the District Court's Local Rule 56.1 on which LBR 7056-1 is based,
but the error is harmless.

a different closing deadline than the one expressed in the Purchase Agreement.  Finding

the contractual closing deadline unambiguous and different from what the parties

negotiated according to Mr. Akabas, the Court concluded that his declaration testimony

was barred on this point by the parol evidence rule.  *Decision*, 620 B.R. at 498.[5]  Mr.

Akabas did not testify about negotiations relating to the phrase "reasonably projected,"

the only ambiguity the Court noted.  The *Motion* argues that the Court got it wrong,

(*Motion* at 27), but simply rehashes the arguments previously made, considered and

decided.

>    As stated, there were two exceptions.  First, SOF No. 20 stated:

>    ***Wansdown knew that Wansdown's representation that the proceeds of
>    the sale would be sufficient to satisfy all claims was critical to 29
>    Beekman*** because only if it were true could the bankruptcy plan be
>    adopted, and the sale proceed as quickly as contemplated.  Therefore, 29
>    Beekman also expressly requested and negotiated that such representation
>    would also have to be true and accurate at closing, or 29 Beekman would
>    be excused from closing.  Akabas Decl., at ¶¶ 25-26.

(Emphasis added.)

>    The italicized part of SOF No. 20 stated as a matter of fact what the Debtor knew.

The supporting evidence in paragraph 25 of the *Akabas Declaration* stated:

>    Wansdown's representation that the proceeds of the sale would be
>    sufficient to satisfy all claims was critical to 29 Beekman because only if it
>    were true could the bankruptcy plan be adopted, and the sale proceed as
>    quickly as contemplated.

---

[5]    At oral argument, the Court overruled the Debtor's hearsay objection.  While the form of the
submission (a declaration) was technically hearsay (an out-of-court statement offered for the truth of the
matters asserted therein), Mr. Akabas had personal knowledge of the negotiations and the content of the
declaration was not hearsay.  *See* 11 MOORE § 56.91[3].  If Mr. Akabas were to testify to the same facts at
trial, his testimony would not be hearsay.

The supporting evidence did not refer to what the Debtor knew.  While it arguably implied that fact, the Court did not draw that inference against the Debtor as the non-moving party on Beekman's motion for summary judgment.

Second, SOF No. 27 stated:

The Debtor's representations during Contract negotiations that the purchase price would satisfy all claims was also memorialized in the Contract[.]

The SOF did not include a supporting evidentiary reference but there could be only one — the Purchase Agreement.  Suffice it to say that the Purchase Agreement speaks for itself.  Accordingly, the Debtor's failure to respond to these two SOFs did not result in "deemed admissions."

### D.    Extent of the "Deemed Admissions"

Even if all of the facts cited in the SOF were deemed admitted, the Court denied the cross-motions for a different, unrelated reason — the ambiguity of the phase "as reasonably projected" in the Proceeds Representation — and the "deemed admissions" are no longer part of the case.  As noted, if the movant supports a fact with citations to the record, and the respondent fails to properly address movant's assertion of fact, "the court may consider the fact undisputed for purposes *of the motion*."  FED. R. CIV. P. 56(e)(2) (emphasis added); *accord* LBR 7056-1(d) ("Each numbered paragraph in the statement of material facts required to be served by the moving party shall be deemed admitted for *purposes of the motion* unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party.") (emphasis added).  If the motion for summary judgment is denied, the party opposing the motion is free to contest the facts asserted by the movant in

subsequent proceedings.  FED. R. CIV. P. 56 advisory committee's note to 2010
amendment ("The fact is considered undisputed only for purposes of the motion; if
summary judgment is denied, a party who failed to make a proper Rule 56 response or
reply remains free to contest the fact in further proceedings."); *accord* 11 MOORE §
56.99[b] ("Courts and parties should be mindful that the admission that results from
applying this option is, indeed, for purposes of the motion only.  If the case survives the
summary judgment motion, the party against whom the fact was deemed admitted will
be free to dispute the fact in future proceedings.").

Despite the clear mandate of Rule 56, Beekman contends that the "deemed
admission" under Rule 56 constitutes a judicial admission that binds the Debtor for the
entire case.  Beekman's argument directly contravenes Rule 56(e)(2), and its authorities
do not support it.  In *Cosy Goose Hellas v. Cosy Goose USA, Ltd.*, 581 F.Supp.2d 606
(S.D.N.Y. 2008), Beekman's main authority, the plaintiff moved for summary judgment
on the issues of unjust enrichment and restitution.  *Id.* at 627.  The Court was concerned
that the record submitted in connection with the motion omitted relevant discovery
materials and denied the motion without prejudice to renew within forty-five days.  *Id.*
In the footnote cited by Beekman, the Court stated that "[i]n raising this possibility of
additional motion practice," the parties were bound by their filings in connection with
the motion, including under Local Rule 56.1, and "[t]he facts found to be undisputed or
deemed to be admitted in this Decision are binding on counsel in any such additional
motion." *Id.* at 627 n.16.  The "additional motion" referred to the renewed motion for
summary judgment.  The Court did not hold that the parties were bound under Local

Rule 56.1 for the entire case, including the trial.  To the extent it did, the ruling directly

contravenes Rule 56(e)(2), and I decline to follow it.[6]

## E.   Beekman's Other Arguments

Several of the other arguments raised in the *Motion* concern issues that were

either not properly raised at the summary judgment stage or were briefed, argued, and

decided in connection with the summary judgment motions.

### 1.   The phrase "as reasonably projected" only modifies "seller's contemplated estate in bankruptcy."  (*Motion* at 23-26.)

The Proceeds Representation states that "the net proceeds of a sale under this

Contract would be sufficient to satisfy all claims against Seller and, *as reasonably*

*projected*, Seller's contemplated estate in bankruptcy . . . ."  (Purchase Agreement ¶

51(b) (emphasis added).)  In the *Motion*, Beekman argues that the italicized phrase only

---

[6]     Beekman's other authorities are wholly inapposite.  In *Gubitosi v. Kapica,* 154 F.3d 30, 31 n.1 (2d Cir. 1998), the Second Circuit reversed the denial of the defendant's motion for summary judgment because the plaintiff had completely failed to respond and was deemed to have admitted the facts stated in the defendant's statement of undisputed facts pursuant to Local Rule 3(g) (now Local Rule 56.1).  The Court did not hold that the facts were deemed admitted for all purposes in the litigation.

In *Campoli v. Chubb Group of Ins. Cos.*, No. 3:04CV1004 (MRK), 2006 U.S. Dist. LEXIS 1564, at *9-10 (D. Conn. Jan. 9, 2006), *aff'd sub nom. Campoli v. Healthextras, Inc.*, 232 F. App'x 20 (2d Cir. 2007), plaintiff's counsel conceded in response to HEI's statement of undisputed facts that the plaintiff and HEI were not joint venturers and repeated the concession during oral argument.  *Id.* at *9.  The Court ruled that Campoli's counsel's concession constituted a judicial admission that HEI and Federal were *not* joint venturers and doomed Campoli's claim.  *Id.* at *9-10 (citing *Pacheco v. Serendensky,* 393 F.3d 348, 354 (2d Cir. 2004) ("A party's assertion of fact in a pleading is a judicial admission by which [the party] normally is bound throughout the course of the proceeding.") (internal quotation marks omitted)).  Here, the Debtor did not make any concessions.

Finally, in *Anastasiou v. M/T World Trust*, 338 F. Supp. 2d 406 (E.D.N.Y. 2004), the Court granted the defendant's summary judgment motion because the plaintiff did not dispute the statement in the defendant's statement of undisputed facts that the vessel at issue was not negligently designed or manufactured.  The Court concluded that his failure to contest the facts constituted an admission and the Court was bound to accept the admission despite anything to the contrary set forth in the plaintiff's expert report.  *Id.* at 419 (citing Local Rule 56.1).  The Court was addressing the effect of the admission in the context of the summary judgment motion and did not hold that the admission bound the plaintiff for all proceedings in the action.

modifies what follows.  In other words, the Proceeds Representation consists of two independent parts.  First, the sale proceeds must be sufficient to satisfy all claims against the Debtor without regard to any projections.  Second, the sale proceeds must be sufficient to satisfy all claims against the Debtor's contemplated bankruptcy estate *as reasonably projected.*

This argument was never made by the Debtor or properly raised by Beekman.  In fact, during the following colloquy, Beekman's counsel seemed to agree that "reasonably projected" applied to the entire Proceeds Representation:

> **MR. SERBAGI**: 51(b) is one of the representations, and it says, seller represents that the net proceeds of sale under the contract will be sufficient to satisfy all claims.  It could not be clearer, and that condition was not met. I think you understand that, and –
>
> **THE COURT**: Well, but isn't that a question of fact for the reasons I've raised with Mr. Herman? . . .  I would have to determine what the Debtor was reasonably projecting as of whatever the closing date was.  Let's say February 10.  Wouldn't I have to do that?
>
> **MR. SERBAGI**: You know what, I respect that conclusion. . . .

(*Transcript of 7/28/20 Hr'g*, dated July 29, 2020, at 15:24-16:10 ("*Tr.*") (ECF Doc. # 59).)  Rather, counsel contended that there was no factual dispute regarding the insufficiency of the proceeds "as reasonably projected."  (*See Tr.* at 16:10-14.)

This new argument was made for the first time in a footnote in a supplemental letter brief ordered by the Court on different issues.  (*Letter from Christopher Serbagi, Esq. to the Court*, dated Aug. 4, 2020, at 5 n.4 ("*Beekman Supplement*") (ECF Doc. # 57).)  The Court does not consider arguments raised in a footnote, *Levy v. Young Adult Inst., Inc.*, 103 F. Supp. 3d 426, 441 (S.D.N.Y. 2015), especially when the argument is asserted in response to a request for supplemental briefing on different issues.

**2.    The Debtor never argued that Golsorkhi was interpreting the Purchase Agreement.  (*See Motion* at 21-23.)**

The declaration signed by Gholam Reza Golsorkhi, the managing director and president of the Debtor, pursuant to LBR 1007-2 stated that the parties had forty-five days after the Confirmation Order, a term that included the Sale Order, to close on the Purchase Agreement.  The Purchase Agreement actually stated that the Closing Date was set to take place no later than forty-five days after the Confirmation Order became final and non-appealable, "provided, however, that in no event shall the Closing take place later than January 31, 2020, subject to extension of the Final Date." (Purchase Agreement ¶¶ 51(e), 52(d).)  Thus, Golsorkhi's statement ignored the outside deadline of January 31, 2020.[7]

Beekman argued that Golsorkhi's statement regarding the forty-five-day closing deadline was a judicial admission notwithstanding the different outside closing deadline stated in the Purchase Agreement.  The Debtor disagreed.  It contended, among other things, that Golsorkhi's "statement could not constitute a judicial admission because it was not a deliberate statement with regard to the interpretation of a document." (*Opposition of Wansdown Properties Corporation N.V. to 29 Beekman's Cross-Motion for Summary Judgment*, dated June 8, 2020, at ¶ 19 ("*Debtor's MSJ Opposition*") (ECF Doc. # 35); *accord Reply of Wansdown Properties Corporation N.V. in Further*

---

[7]    Beekman could extend the Final Date "on one or more occasions, until the earlier of 30 days after the entry of the Confirmation Order or January 31, 2021 by notice to Seller prior to the passing of the then effective Final Date." (Purchase Agreement ¶ 52(d).)  The outside Final Date was February 18, 2020, *Decision*, 620 B.R. at 497, which Beekman sought to extend to March 10, 2020, fifty-four days after the entry of the Sale Order.  *Id.* at 501.

*Support of Its Motion for Summary Judgment*, dated June 23, 2020, at ¶ 10 n. 4
("*Debtor's MSJ Reply*") (ECF Doc. # 42) (same).)

The binding effect of Golsorkhi's statement was the subject of colloquy during oral argument.  The Court asked Beekman's counsel if a statement by Golsorkhi that the sale price was $5 million would bind the Debtor even though the Purchase Agreement said the price was $10.3 million.  (*See Tr.* at 24:24-25:2.)  Beekman's counsel responded that he was not saying that it didn't matter what the contract said, but "I'm saying that Mr. Golsorkhi took an interpretation of the contract that we are taking, and we believe is the only reasonable interpretation to take." (*Tr.* at 25:16-19.)  In other words, a statement is a judicial admission if the statement reflects a reasonable interpretation of the contract, and the other party agrees.  But Golsorkhi's "forty-five-day statement" controverts an unambiguous provision of a contract, *i.e.*, the January 31, 2020 closing deadline (subject to extension) and cannot be a reasonable interpretation.  Here, the parties had to close by January 31, 2020, subject to Beekman's right to extend the closing to a dated no later than thirty days after the Sale Order entered on January 16, 2020.

The Court concluded that Golsorkhi was interpreting the deadline under the Purchase Agreement and asked the parties to brief whether the Debtor was bound by Golsorkhi's interpretation if it directly contradicted the Purchase Agreement.  (*Tr.* at 40:16-19.)  The Court thereafter received letter briefs from each side.  Beekman continued to argue that Golsorkhi's statement regarding the closing deadline was not an interpretation of the Purchase Agreement.  (*Beekman Supplement* at 2-4.) The Debtor argued in its supplemental letter brief, among other things, that the interpretation of a

16

contract is a statement of law, not of fact; a statement of law cannot be the basis of a

judicial admission; and "Mr. Golsorkhi's statement is a legal conclusion because it

construes a provision of a contract." (*Letter from Ira L. Herman*, Esq. *to the Court*,

dated Aug. 4, 2020, at 1-3 (ECF Doc. # 56).)  The Court agreed, concluding that

Golsorkhi's statement was his interpretation of the closing deadline under the Purchase

and was not, therefore, a judicial admission. *Decision*, 620 B.R. at 499.  Accordingly,

Beekman fails to show a basis for reconsideration.

### 3.    Closing on a non-appealable order was not contemplated by the parties.

The Purchase Agreement provided in relevant part that "[t]he closing of the

transactions contemplated herein ('Closing Date') shall take place no later than the

forty-five (45) days after the Confirmation Order which becomes final and non-

appealable," (Purchase Agreement ¶ 51(e)), subject to the outside deadline discussed

above.  However, if the Court found that Beekman was a good faith purchaser under 11

U.S.C. § 363(m), Beekman "may request that the Closing Date take place prior to the

Confirmation Order becoming final and non-appealable." *Id.* ¶ 51(f).  Thus, Beekman,

as a good faith purchaser, had the option to close under a non-final Confirmation Order.

If Beekman did not exercise the option, the Confirmation Order had to be final and non-

appealable.

Beekman insisted on a final order.  In his January 15 Letter,[8] at page 2, Mr.

Akabas stated that "[t]he buyer stands by its obligations under the contract of sale if a

plan is confirmed by a confirmation order reasonably acceptable to buyer that is final

---

[8]    A copy of the January 15 Letter is annexed as Exhibit C to the *Herman Declaration*.

and non-appealable in time for a closing by the current deadline, January 31, 2020," and "the buyer will elect to terminate the contract of sale if a bankruptcy plan is not final and non-appealable in time for a closing to occur by the current deadline, January 31, 2020." After the Court entered the Sale Order on January 16 which included the finding that Beekman was a good faith purchaser, Beekman did not change its position and opt to close under a non-final Sale Order so the obligation to close required a final, non-appealable Sale Order.  *See Decision*, 620 B.R. at 499 ("[T]he Purchase Agreement conditioned the obligation to close on a final and non-appealable Confirmation Order.").

In the *Motion*, Beekman argues that the parties did not have the opportunity to brief the Court's *sua sponte* decision, not adopted by Debtor, that the parties contracted that the Confirmation Order would be final and non-appealable before they were required to close.  (*See Motion* at 26-27.)  But that was never in dispute and was precisely the position that Beekman took on January 15.  Moreover, Beekman concedes that "parties almost never close on a sale of assets of a bankruptcy estate prior to the expiration of the appeal period for an order approving such sale."  (*Motion* at 27; *accord Reply* at ¶ 15 n.1 ("So, yes, the Contract, *as 29 Beekman argues*, certainly contemplates a closing on a final and non-appealable order . . . .") (emphasis in original).) Furthermore, the Court expedited the sale hearing to allow the Debtor to obtain a final, non-appealable order by the January 31 contractual deadline, *Decision*, 620 B.R. at 492-93, and Beekman never argued that expedition was unnecessary because the parties were obligated to close under a non-final order.

**4.    The Debtor may not unilaterally impose a time-of-the-essence closing date after a mutually agreed adjournment.**

The *Motion* argues that parties to a real estate contract may not unilaterally impose a time-of-the-essence closing date after a mutually agreed adjournment, because doing so would alter the agreement between the parties without the consent or fault of the other party.[9]  Therefore, no time-of-the-essence closing date was ever established. (*Motion* at 32-33.)

The parties actively litigated the Debtor's imposition of a time-of-the-essence clause during the cross-motions.  (*See 29 Beekman's Memorandum of Law in Opposition to Debtor's Motion for Summary Judgment and in Support of 29 Beekman's Cross-Motion for Summary Judgment*, dated May 7, 2020, at 12-15 (ECF Doc. # 28); *29 Beekman's Reply Memorandum of Law in Support of Its Motion for Summary Judgment on Debtor's Claims*, dated June 23, 2020, at 17-18 (ECF Doc. # 44); *Debtor's MSJ Opposition* at ¶¶ 42-45; *Debtor's MSJ Reply* at ¶¶ 18-21.)  The Court addressed the issue at length, distinguishing Beekman's principal authority in the process, and concluded that Beekman had committed a material breach by failing to close by February 10, 2020 subject the Debtor's ability to show that it was ready, willing, and able to close.  *See Decision*, 620 B.R. at 501-03.  Beekman has failed to show that this issue warrants reconsideration.

## 5.    The Debtor had an obligation to tell the Court that it could not meet the condition.

In its *Motion*, Beekman argues that the Court ruled in the Sale Order that the Debtor must comply with the terms and conditions of the Purchase Agreement, and if

---

[9]     The adjournment was not the product of mutual consent.  The Debtor wanted to close on January 31, 2020, but Beekman exercised its contractual right to adjourn the closing date to February 10, 2020. *See Decision*, 620 B.R. at 494.  The Debtor had no say.

the Debtor wanted to be excused from a closing condition, it should have told the Court

that it could not fulfill the condition.  (*Motion* at 19-21.)  The argument makes no sense.

The Sale Order did not relieve the Debtor of any obligations under the Purchase

Agreement.  To the contrary, it authorized and directed the Debtor to assume the

Purchase Agreement and comply with its terms, including to "*perform its obligations*

*under and comply with the terms of the Purchase Agreement* and execute and perform

any additional agreements, instruments or documents that may be reasonably necessary

or appropriate to implement the Purchase Agreement; . . . consummate the sale of the

Property *in accordance with the terms and conditions of the Purchase Agreement*;

and . . . take all other and further actions as may be reasonably necessary or appropriate

to implement the sale of the Property and *perform its obligations under the Purchase*

*Agreement*."  (Sale Order ¶ 3 (emphasis added).)[10]  But if the Purchase Agreement or

non-bankruptcy law permitted a closing condition to be excused, the Sale Order did not

preclude it.  Whatever rights and obligations the parties had they retained.

## F.    Disproportionate Forfeiture

As noted earlier, the Court highlighted a second, factual question.  Even if the

Debtor could not satisfy the Proceeds Representation at closing, would returning the

Downpayment to Beekman cause a disproportionate forfeiture and relatedly, whether

the condition was material to Beekman and its concerns regarding delay.  *Decision*, 620

B.R. at 504.  The *Motion* maintains that the Debtor never raised this issue, it was

---

[10]        A copy of the Sale Order is attached as Exhibit 6 to the *Declaration of Christopher Serbagi in*
*Opposition to Wansdown's Motion for Summary Judgment and in Support of 29 Beekman's Cross-*
*Motion for Summary Judgment*, dated May 7, 2020 (ECF Doc. # 23).

manifestly unfair for the Court to raise it *sua sponte* and rest a part of the *Decision* on the doctrine, and most important, the doctrine of disproportionate forfeiture does not apply in this case as a matter of law.

Beekman's contention that the Debtor never raised this issue is not entirely correct.  The Debtor argued that Beekman's concerns regarding delay centered on its fear of an auction, and Beekman wanted to be sure that the sale would be private. (*Debtor's MSJ Opposition* at ¶ 22.)  If the sale generated enough proceeds to pay the creditors in full, an auction would be unnecessary because the Debtor would be the only affected party, giving up the possible upside resulting from a higher and better offer. The Debtor argued that the Pelmadulla Claim, which raised the specter that the proceeds would be insufficient to pay everyone in full, did not prevent the Court from approving the private sale pursuant to the Sale Order, which the Court did.  Accordingly, the Proceeds Representation was not material because 29 Beekman received the benefit of its bargain – a seller ready, willing, and able to deliver title pursuant to a fully enforceable bankruptcy court order authorizing the private sale of the Townhouse free and clear to Beekman.  (*See id.* at ¶ 23.)

During oral argument, the Court ordered supplemental briefing on whether the Debtor was required to show simply that it was ready, willing, and able to deliver title or whether it also had to show that it could satisfy the other conditions to closing, *i.e.*, the Proceeds Representation.  (*Tr.* at 39:5-10.)  The Debtor's counsel asked whether the supplemental briefing should also cover the issue of materiality, a subject that had been discussed.  Although the Court was not convinced that the Proceeds Representation was

material, it questioned whether the materiality of a closing condition mattered in deciding if the Debtor was ready, willing, and able to close.  (*Tr.* at 39:13-40:7.)

Although the Court questioned the issue of materiality at the hearing and rejected the need to brief it, the *Decision* questioned the materiality of the Proceeds Condition. In addition, Beekman is correct that the Debtor never argued that returning the Downpayment would result in a disproportionate forfeiture.  And importantly, the *Motion* discusses authority supporting the proposition that neither materiality nor risk of forfeiture are relevant where the condition is expressed in the contract and the Debtor has not suffered a forfeiture or undue hardship.  *See Oppenheimer & Co., Inc. v. Oppenheim, Appel, Dixon & Co.*, 660 N.E.2d 415, 418 (N.Y. 1995).  Accordingly, the Court will grant reconsideration solely with respect to the issue of whether, as a matter of law, the doctrine of disproportionate forfeiture as discussed in the *Decision* does or does not apply in this case.  Each side may submit a supplemental memorandum of law, not exceeding ten pages (double spaced), exclusive of the title page, table of contents, and table of authorities.  The deadline for the submissions is one week from the date of this order.  The Court has considered the parties' remaining arguments and concludes that they lack merit.

So ordered.

Dated:   New York, New York
        January 6, 2021

/s/ *Stuart M. Bernstein*
STUART M. BERNSTEIN
United States Bankruptcy Court