**BLANK ROME LLP**
1271 Avenue of the Americas
New York, NY 10020
Tel:   212-885-5000
Fax:   212-885-5001
Ira L. Herman
*Special Litigation Counsel for Plaintiff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------ x

In re:

WANSDOWN PROPERTIES CORPORATION N.V.,

                Debtor.

------------------------------------------------------------------ x

WANSDOWN PROPERTIES CORPORATION N.V.,

                Plaintiff

          v.

29 BEEKMAN CORP.,

                Defendant.

------------------------------------------------------------------ x

Chapter 11

Case No.:  19-13223 (DSJ)

Adv. Pro. No. 20-1056 (DSJ)

**NOTICE OF MOTION FOR ENTRY**
**OF AN ORDER (A) PURSUANT TO 11 U.S.C. §§ 105(a) AND 1142(b)**
**IN AID OF IMPLEMENTATION OF CONFIRMED CHAPTER 11 PLAN,**
**AND (B) PURSUANT TO 11 U.S.C. § 105(a) AND BANKRUPTCY**
**RULE 9019 AUTHORIZING AND APPROVING SETTLEMENT**
<u>**OF ADVERSARY PROCEEDING WITH 29 BEEKMAN CORP.**</u>

      PLEASE TAKE NOTICE that on December 15, 2023, the above-captioned debtor and debtor-in-possession (the "Debtor"), by and through its counsel, filed the *Motion for Entry of an Order (a) Pursuant to 11 U.S.C. §§ 105(a) and 1142(b) In Aid of Implementation of Confirmed Chapter 11 Plan, and (b) Pursuant to 11 U.S.C. § 105(a) and Bankruptcy Rule 9019 Authorizing and Approving Settlement of Adversary Proceeding with 29 Beekman cop.* (the "**Motion**").

      PLEASE TAKE FURTHER NOTICE that a hearing (the "**Hearing**") on the Motion will be held before The Honorable David S. Jones, Bankruptcy Judge of the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"), One

Bowling Green, New York, New York 10004-1408, on January 9, 2024, at 10:00 a.m. (prevailing Eastern Time).

PLEASE TAKE FURTHER NOTICE that the Hearing will only be conducted virtually via Zoom for Government. Parties should not appear in person. Parties wishing to participate in or observe the Hearing must confirm their appearance using the Bankruptcy Court's eCourt Appearances tool no later than 4:00 p.m., one business day before the Hearing. The eCourt Appearances tool is accessible on the Bankruptcy Court's website, at: https://www.nysb.uscourts.gov/ecourt-appearances. The Bankruptcy Court will circulate by email prior to the Hearing the Zoom link to such persons. Parties are strictly forbidden from circulating or sharing the Zoom link.

PLEASE TAKE FURTHER NOTICE that any responses or objections (the "**Objections**") to the Motion shall: (a) be in writing; (b) conform to the Bankruptcy Rules, the Local Rules, and all General Orders applicable to chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York; (c) (i) by attorneys practicing in the Bankruptcy Court, including attorneys admitted pro hac vice, be filed with the Bankruptcy Court electronically on the docket of the above-captioned case by registered users of the Bankruptcy Court's electronic filing system and in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov) with a copy to Chambers at the time of filing and service, by email to jones.chambers@nysb.uscourts.gov or (ii) by all other parties in interest in accordance with the customary practices of the Bankruptcy Court and General Order M-399; and (d) be served so as to be actually received no later than January 2, 2024 at 4:00 p.m. (prevailing Eastern Time) (the "**Objection Deadline**"), by the following parties or their respective counsel: (a) undersigned counsel to the Debtor; (b) the Office of the United States Trustee; (c) counsel to 29 Beekman Corp.; and (d) any party that has requested notice pursuant to Federal Rule of Bankruptcy Procedure 2002.

PLEASE TAKE FURTHER NOTICE that a copy of the Motion and any other pleadings may be obtained by visiting the Bankruptcy Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

PLEASE TAKE FURTHER NOTICE that the Hearing may be continued or adjourned thereafter from time to time without further notice other than an announcement of the adjourned date or dates at the Hearing or at a later hearing.

[*Remainder of page is intentionally blank.*]

PLEASE TAKE FURTHER NOTICE that if no objections or other responses are timely filed and served with respect to the Motion, the Debtor shall, on or after the Objection Deadline, submit to the Bankruptcy Court an order substantially in the form annexed as Exhibit A to the Motion, which order the Bankruptcy Court may enter with no further notice or opportunity to be heard.

Dated: December 15, 2023
      New York, New York

**BLANK ROME LLP**

By: /s/ Ira L. Herman
Ira L. Herman, Esq.
1271 Avenue of the Americas
New York, New York 10020
Telephone: (212) 885-5000
ira.herman@blankrome.com

*Special Litigation Counsel for Plaintiff*

**BLANK ROME LLP**
1271 Avenue of the Americas
New York, NY 10020
Tel: 212-885-5000
Fax: 212-885-5001
Ira L. Herman
*Special Litigation Counsel for Plaintiff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------ x

In re:

WANSDOWN PROPERTIES CORPORATION N.V.,

          Debtor.

------------------------------------------------------------------ x

WANSDOWN PROPERTIES CORPORATION N.V.,

          Plaintiff

          v.

29 BEEKMAN CORP.,

          Defendant.

------------------------------------------------------------------ x

Chapter 11

Case No.: 19-13223 (DSJ)

Adv. Pro. No. 20-1056 (DSJ)

**MOTION FOR ENTRY OF AN ORDER (A) PURSUANT TO 11 U.S.C. §§**
**105(a) AND 1142(b) IN AID OF IMPLEMENTATION OF CONFIRMED**
**CHAPTER 11 PLAN, AND (B) PURSUANT TO 11 U.S.C. § 105(a) AND**
**BANKRUPTCY RULE 9019 AUTHORIZING AND APPROVING SETTLEMENT**
**OF ADVERSARY PROCEEDING 29 BEEKMAN CORP.**

Plaintiff and Reorganized Debtor Wansdown Properties Corporation N.V. (the "**Debtor**")

submits this *Motion for Entry of an Order (a) Pursuant to 11 U.S.C. §§ 105(a) and 1142(b) In*

*Aid of Implementation of Confirmed Chapter 11 Plan, and (b) Pursuant to 11 U.S.C. § 105(a)*

*and Bankruptcy Rule 9019 Authorizing and Approving Settlement of Adversary Proceeding with*

*29 Beekman Corp.* (the "**Motion**"), seeking entry of an order authorizing the Debtor to enter into

and approving that certain Stipulation of Dismissal and Settlement Agreement, dated as of

December 14, 2023 (the "**Agreement**"), annexed hereto as Exhibit A.[1]  In support of the Motion, the Debtor respectfully states as follows:

<b><u>PRELIMINARY STATEMENT</u></b>

1.    The Agreement represents a good faith, complete settlement of all disputes between the Debtor, its officers and legal professionals, and 29 Beekman Corp. ("**Beekman**").

2.    The gravamen of the parties' disputes concern whether Beekman or the Debtor breached an agreement concerning the sale of the Debtor's primary asset – the real property located at 29 Beekman Place (the "**Townhouse**") and, concomitantly, who is entitled to retain the down payment made under the Purchase Agreement (as herein defined).  The dispute has led to three adversary proceedings (two of which have been dismissed), motions to withdraw reference, and multiple appeals. The above-captioned adversary proceeding remains to be tried and, despite, cross-motions for summary judgment the issues still to be tried remain in dispute.

3.    In November and December 2023, the parties engaged in a final round of settlement discussions which resulted in the Agreement. The Agreement, along with the settlement agreement with Azadeh Azari, being filed simultaneously with this Motion, resolves all remaining adversary proceedings in Debtor's bankruptcy case, paving the way to a distribution to unsecured creditors and outstanding administrative expense claims. Specifically, this Agreement provides:

    A.    Voluntary dismissal with prejudice of the Complaint as against Beekman, pursuant to Rule 41 of the Federal Rules of Civil Procedure, made applicable pursuant to Bankruptcy Rule 7041.

    B.    Within five (5) business days following the Settlement Effective Date, Beekman shall file with the District Court a motion to dismiss the Pending Appeal (as defined in the Agreement), pursuant to Bankruptcy Rule 8023,

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Agreement.

that provides that each party shall bear its own costs and that costs will not be taxed on either party.

C.    Payment of $900,000 to Beekman to be released to counsel to Beekman to be released to counsel to Beekman by wire transfer upon entry of a Final Order approving the Agreement and authorizing the Debtor to enter into and consummate the Agreement.

D.    Mutual releases by and among the parties and certain related parties with respect to any and all actions, attorneys' fees, charges, claims, costs, demands, expenses, judgments, liabilities and causes of action of any kind, nature or description, whether matured or unmatured, contingent or absolute, liquidated or unliquidated, known or unknown, arising out of, related to, or based on any of the claims, defenses, allegations, facts, circumstances, or issues in (i) *In re Wansdown Properties Corporation N.V.*, Ch. 11 Case No. 19-13223 (DSJ), (ii) *Wansdown Properties Corporation N.V. v. 29 Beekman Corp.*, Adv. Pro. No. 20-01056 (DSJ), (iii) *29 Beekman Corp. v. Wansdown Properties Corporation N.V., et al.*, Adv. Pro. No. 20-01063 (DSJ), (iv) *29 Beekman Corp. v. Blank Rome LLP, et al.*, Adv. Pro. No. 22-01075 (DSJ), and/or (v) the grievance complaint of Seth A. Akabas, Docket No. 2020.1175. In furtherance of the releases being provided under the Agreement, the Agreement provides a "gatekeeping" provision that requires before any releasor files an action against any of the Debtor Releasees or the Beekman Releasees, such releasor must first file a motion seeking approval from the Bankruptcy Court that such claim has not been released under this Agreement.

4.    The Debtor submits that the Agreement is well above the lowest reasonable point in the range of reasonableness as required by the Bankruptcy Rules and resolves the penultimate adversary proceeding remaining in this case.

5.    For these reasons, all as more fully set forth below, the Debtor requests that the Court enter the Order approving the Agreement.

## JURISDICTION

6.    This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

7.     The statutory predicate for the relief requested herein is section 105(a) of Bankruptcy Code and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

## BACKGROUND

I.     **THE BANKRUPTCY PROCEEDING**

8.     On October 8, 2019 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**").

9.     On July 16, 2020, the Court entered an order (the "**Confirmation Order**") [ECF No. 130] confirming the *Debtor's Second Amended Chapter 11 Plan* dated June 9, 2020 (the "**Plan**") [ECF No. 113]. On August 16, 2020, the Effective Date (as defined in the Plan) occurred.

10.     Under the Plan, creditors holding General Unsecured Claims (as defined in the Plan) are entitled to receive a pro rata share of the remaining cash in the Plan Fund following the payment of administrative claims, priority claims, tax claims, fee claims and allowed claims in Classes 1-4.

11.     Currently, the Debtor is holding $5,296,681.20 that is available for distribution to creditors, which is comprised of (a) $4,213,043.26 from the proceeds of the sale of the Debtor's assets (plus interest thereon), and (b) $1,083,637.94 from the deposit paid by 29 Beekman Corp. ("**Beekman**") (plus interest thereon).

12.     From the Petition Date through the confirmation of the Debtor's chapter 11 plan, on July 16, 2020, the Debtor served as a debtor in possession, and from and after confirmation of the Debtor's chapter 11 plan, Debtor has served as the Reorganized Debtor.

## II.     THE DISPUTE BETWEEN BEEKMAN AND THE DEBTOR

13.     On September 25, 2019, prior to the commencement of Debtor's bankruptcy case, Wansdown and Beekman entered into a contract (the "**Purchase Agreement**") for the sale of the property located at 29 Beekman Place, New York, New York (the "**Townhouse**") and a separate agreement for the sale of certain furniture. As required under the Purchase Agreement, on October 7, 2019, 29 Beekman made a down payment of $1,030,000.00, to be held by Blank Rome in escrow

14.     On December 2, 2019, Wansdown filed its first Chapter 11 Plan [Main ECF No. 26], which was re-filed as amended on December 9, 2019 [Main ECF No. 30] (the "**First Plan**").

15.     On December 31, 2019, Wansdown's sole shareholder, Pelmadulla Stiftung, Vaduz ("**Pelmadulla**"), filed a proof of claim against Wansdown in the amount of $3,242,941.19 (the "**Pelmadulla Claim**").

16.     On January 7, 2020, Wansdown filed a motion for approval of the Purchase Agreement and the Letter Agreement pursuant to 11 U.S.C. §§ 363 and 365 (the "**Sale Motion**"). In connection with the Sale Motion, on January 14, 2020, the Bankruptcy Court stated that it would not be possible to confirm the First Plan by January 31, 2020, because it was premised on repaying all creditors other than Golsorkhi, and the Debtor would have to file a new plan if it still sought to obtain a confirmed plan. As a result, the sale of the Townhouse was not consummated and the parties dispute each other's respective obligations under the Purchase Agreement and who was responsible for the failure to close on the Townhouse.

17.　　On February 26, 2020, the Debtor commenced an adversary proceeding against Beekman (Adv. Pro. No., 20-1056, the "**1056 Proceeding**") claiming that 29 Beekman had breached the Purchase Agreement and seeking a declaratory judgment that Wansdown was entitled to retain the down payment thereunder

18.　　On March 11, 2020, the Bankruptcy Court authorized the Debtor to use a portion of the security deposit it received from Beekman to pay for certain approved administrative expenses during the pendency of the Debtor's bankruptcy case and provided Beekman and Azari a first priority lien on the funds disbursed. [*See* Case No. 19-13223, ECF No. 80] After the sale of the Debtor's assets under the Second Sale Contract (as defined below), such amounts, we returned to the segregated account representing the deposit paid by Beekman.

19.　　On March 13, 2020, 29 Beekman filed a motion to dismiss the 1056 Proceeding. [1056 ECF No. 6].

20.　　On March 19, 2020, while 29 Beekman's motion to dismiss was pending, the Debtor requested leave to file a motion for summary judgment. [1056 ECF No. 7]

21.　　 On March 25, 2020, 29 Beekman commenced an adversary proceeding Adv. Pro. No., 20-1063 (the "**1063 Proceeding**") the 1063 Proceeding against the Debtor, Blank Rome, and Golsorkhi, seeking damages for fraud, damages for breach of the Purchase Agreement, and declaratory relief in connection with the Property Sale. [1063 ECF No. 1].

22.　　On April 8, 2020, the Debtor moved for summary judgment in the 1056 Proceeding. [1056 ECF No. 12].

23.　　On April 23, 2020, 29 Beekman filed its Amended Complaint in the 1063 Proceeding, which is the currently operative 1063 Complaint. [1063 ECF No. 3].

24.     On May 1, 2020, the Court entered an Order procedurally consolidating the 1063 Proceeding with the 1056 Proceeding such that any future filings in the 1063 Proceeding would instead be filed in the 1056 Proceeding. [1063 ECF No. 4].

25.     On May 7, 2020, 29 Beekman cross-moved for summary judgment in the 1056 Proceeding. [1056 ECF No. 27].

26.     By motion dated June 5, 2020, the Debtor "announced that it had 'negotiated and entered into[']" a new contract to sell the Property to a new buyer for $11,500,000, "subject to higher and better offers pursuant to bidding procedures that are approved by the Court" (the "**Second Sale Contract**"). [1075 ECF No. 1 at 35–36 of 75; *see generally* Main ECF No. 102].

27.     On June 9, 2020, the Debtor filed its Second Amended Chapter 11 Plan (as amended and modified, including on June 16, 2020, the "**Second Plan**"), which provided for approval of the Second Sale Contract. [See generally Main ECF No. 105].

28.     On August 5, 2020, pursuant to the Second Plan and the Second Sale Contract, the Debtor sold the Property for $11.5 million

29.     On October 5, 2020, the Court denied both cross-motions for summary judgment in the 1056 Proceeding (the "**Summary Judgment Decision**"). [1056 ECF No. 60].

30.     On October 19, 2020, Beekman filed a notice of appeal and thereafter moved the United States District Court for the Southern District of New York (the "**District Court**") for leave to file an interlocutory appeal of the Summary Judgment Decision (the "Interlocutory Appeal"), which the Debtor opposed.

31.     On October 19, 2020, Beekman also filed a motion for reconsideration of the Court's denial of its summary judgment motion. [1056 ECF No. 62].

32.     On November 3, 2020, Beekman commenced an action against Blank Rome and Golsorkhi in New York state court, alleging claims of fraud, aiding and abetting fraud, and breach of contract. [1075 ECF No. 1 at 18–51 of 75], that was removed to the Bankruptcy Court on April 5, 2022, and designated as Adv. Pro. No. 22-1075 (the "**1075 Proceeding**"). [*See generally* 1075 Proceeding docket sheet].

33.     On January 6, 2021, the Court denied in part and granted in part 29 Beekman's motion for reconsideration of its denial of summary judgment (the "**Reconsideration Decision**"). [1056 ECF No. 78].

34.     On February 19, 2021, following a round of supplemental briefing, the Bankruptcy Court issued a decision that, inter alia, stated "[s]till to be tried is what the parties intended when they agreed that the sale proceeds would be sufficient to satisfy the claims 'as reasonably projected,' and whether the Debtor would have been able to satisfy that condition precedent at the time of the scheduled Closing.'" [1056 ECF No. 82 at 9]

35.     On March 15, 2021, Beekman filed a motion to withdraw the reference with respect to the 1075 Proceeding and the 1056 proceeding.

36.     On September 21, 2021, the District Court entered its *Opinion and Order Denying 29 Beekman Corporation's Motion for Leave to File an Interlocutory Appeal, Denying the Motion to Withdraw the Bankruptcy Reference, and Referring Case to the Bankruptcy Court*.

37.     On May 27, 2022, 29 Beekman filed its Motion to Amend the 1063 Complaint [1056 ECF No. 100] along with, inter alia, a copy of its Proposed Second Amended Complaint.

38.     On March 3, 2023, the Bankruptcy Court entered its *Memorandum Opinion and Order Resolving Motions to Dismiss and Motions to Amend* (the "**Dismissal Decision**"), in

which the Bankruptcy Court dismissed the 1063 Proceeding and 1075 Proceeding and denied

Beekman's request to amend the complaint in the 1063 Proceeding.

39.     On April 26, 2023, Beekman appealed the Dismissal Decision to the District

Court, that has been fully briefed and is pending a decision by the District Court.

40.     On May 2, 2023, Beekman filed its Answer in the 1056 Proceeding.

41.     The parties have conducted negotiations and have determined to resolve the

matter in its entirety on the terms agreed to in the Agreement, that is annexed hereto as

Exhibit A.

## **RELIEF REQUESTED**

42.     By this Motion, the Debtor seeks entry of an *Order (a) Pursuant to 11 U.S.C. §§*

*105(a) and 1142(b) In Aid of Implementation of Confirmed Chapter 11 Plan and Pursuant to 11*

*U.S.C. § 105(a) and Bankruptcy Rule 9019 Authorizing and Approving Settlement of Adversary*

*Proceeding with Certain Defendants and (b) Approving Notice and Service Procedures*.

43.     The Agreement provides in pertinent part as follows:[2]

A.     Voluntary dismissal with prejudice of the Complaint as against Beekman, pursuant to Rule 41 of the Federal Rules of Civil Procedure, made applicable pursuant to Bankruptcy Rule 7041.

B.     Within five (5) business days following the Settlement Effective Date, Beekman shall file with the District Court a motion to dismiss the Pending Appeal (as defined in the Agreement), pursuant to Bankruptcy Rule 8023, that provides that each party shall bear its own costs and that costs will not be taxed on either party.

C.     Payment of $900,000 to Beekman to be released to counsel to Beekman to be released to counsel to Beekman by wire transfer upon entry of a Final Order approving the Agreement and authorizing the Debtor to enter into and consummate the Agreement.

---

[2] The description is a summary only. In case of any discrepancy between the summary and the Agreement, the Agreement shall control.

D.  Mutual releases by and among the parties and certain related parties with respect to any and all actions, attorneys' fees, charges, claims, costs, demands, expenses, judgments, liabilities and causes of action of any kind, nature or description, whether matured or unmatured, contingent or absolute, liquidated or unliquidated, known or unknown, arising out of, related to, or based on any of the claims, defenses, allegations, facts, circumstances, or issues in (i) *In re Wansdown Properties Corporation N.V.*, Ch. 11 Case No. 19-13223 (DSJ), (ii) *Wansdown Properties Corporation N.V. v. 29 Beekman Corp.*, Adv. Pro. No. 20-01056 (DSJ), (iii) *29 Beekman Corp. v. Wansdown Properties Corporation N.V., et al.*, Adv. Pro. No. 20-01063 (DSJ), (iv) *29 Beekman Corp. v. Blank Rome LLP, et al.*, Adv. Pro. No. 22-01075 (DSJ), and/or (v) the grievance complaint of Seth A. Akabas, Docket No. 2020.1175. In furtherance of the releases being provided under the Agreement, the Agreement provides a "gatekeeping" provision that requires before any releasor files an action against any of the Debtor Releasees or the Beekman Releasees, such releasor must first file a motion seeking approval from the Bankruptcy Court that such claim has not been released under this Agreement.

44.  The Agreement further provides that the Bankruptcy Court retains jurisdiction over the Adversary Proceeding, until all matters pertaining to the Agreement are fully and finally resolved and further provides, as more specifically set forth in paragraph 8 of the Agreement, that the Bankruptcy Court shall have the sole and exclusive jurisdiction to determine whether any claim or cause of action has or has not been released under the Agreement.

**BASIS FOR RELIEF REQUESTED**

## I.  THE STANDARD FOR THE APPROVAL OF SETTLEMENTS

45.  Compromises and settlements are a normal part of the bankruptcy process. *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968), *cert. denied*, 391 U.S. 909 (1968), citing *Case v. Los Angeles Lumber Products Co.*, 308 U.S. 106, 130 (1939). The structure and provisions of the Bankruptcy Code promote negotiation and settlement for the benefit of creditors in accordance with "the policy of the law generally [which is] to encourage settlements." *In re Jackson Brewing Co.*, 624 F.2d 599 (5th Cir. 1980). Resolution of claims through settlement furthers the goal of bankruptcy

administration to liquidate estate assets as rapidly as possible "consistent with obtaining the best possible realization upon the available assets and without undue waste by needless or fruitless litigation." *In re Carla Leather, Inc.*, 44 B.R. 457, 471 (Bankr. S.D.N.Y. 1984), *aff'd.* 50 B.R. 764 (S.D.N.Y. 1985). While debtors are free to pursue litigation on behalf of the estate, it "is to exercise prudence and at the same time be in a position so as to act on a settlement opportunity when that opportunity arises." *In re Carla Leather, Inc.*, 44 B.R. at 472.

46.     Bankruptcy Rule 9019(a) permits the Court to approve a compromise or settlement. The Rule provides:

> (a)     <u>Compromise</u>. On motion by the trustee and after notice and a hearing the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

Fed. R. Bankr. P. 9019(a). Neither Bankruptcy Rule 9019 nor any section of the Bankruptcy Code explicitly sets forth the standards by which a court is to evaluate a proposed settlement for approval.

47.     However, the standards for approval of settlements in bankruptcy are well established in precedent, focusing on the proposed settlement's reasonableness and its fairness to creditors. In *TMT Trailer* the seminal case on approval of settlements in bankruptcy cases, the Supreme Court concluded that the trial court must make an informed, independent judgment as to whether a settlement is fair and equitable, stating:

> There can be no informed and independent judgment as to whether a proposed compromise is fair and equitable until the bankruptcy judge has apprised himself of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated. Further, the judge should form an educated estimate of the complexity, expense, and likely duration of such litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair

11

> assessment of the wisdom of the proposed compromise. Basic to this
> process in every instance, of course, is the need to compare the terms
> of the compromise with the likely rewards of litigation.

*Puerto Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390

U.S. 414, 424 (1968) (citations omitted).

48.     The United States Court of Appeals for the Second Circuit has stated that the

responsibility of the judge "is not to decide the numerous questions of law and fact raised by

appellants, but rather to canvass the issues and see whether the settlement 'fall[s] below the

lowest point in the range of reasonableness.'" *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d

Cir. 1983), *cert. denied sub. nom. Cosoff v. Rodman*, 464 U.S. 822 (1983); *In re Purofied Down

Products Corp.*, 150 B.R. 519, 522-23 (S.D.N.Y. 1993); *In re Crowthers McCall Pattern,

Inc.*, 120 B.R. 279, 287 (Bankr. S.D.N.Y. 1990); *In re Carla Leather, Inc.*, 44 B.R. at 470.

The assessment of a settlement only requires identification of the issues in controversy "so

that the bounds of reasonableness can be seen with some clarity." *In re Carla Leather, Inc.*, 44

BR. at 470.

49.     In considering a proposed settlement, the court is guided by a lenient standard

consistent with the theory that "little would be saved by the settlement process if [in order to

approve a settlement] bankruptcy courts [were required to conduct] an exhaustive investigation

and determination of the underlying claims" in order to approve a settlement. *Purofied

Down Products*, 150 B.R. at 522-23. In *Carla Leather*, this Court explained the policy

underlying the abridged review of settlements in bankruptcy as follows:

> The very uncertainties of outcome in litigation, as well as the
> avoidance of wasteful litigation and expense, lay behind the
> Congressional infusion of a power to compromise. This could
> hardly be achieved if the test on hearing for approval meant
> establishing success or failure to a certainty.

*In re Carla Leather, Inc.*, 44 B.R. at 470; *see also In re Purofied Down Products*, 150 B.R. at 522-23.

50.     In evaluating the propriety of a settlement in concert with the foregoing factors, the court need not conduct a trial on the merits (nor a "mini-trial," nor "a rehearsal of the trial") to actually resolve the extant factual and legal issues. The court must simply determine whether, considering all of the relevant issues, the settlement is reasonable. *Newman v. Stein*, 464 F.2d 689, 692 (2d Cir. 1972), *cert denied sub nom. Benson v. Newman*, 409 U.S. 1039 (1972); *see also In re International Distribution Centers, Inc.*, 103 B.R. 420, 423 (S.D.N.Y. 1989); *In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. 493, 496 (Bankr. S.D.N.Y. 1991) ("*Drexel I*"). These issues may include the court's familiarity with the history of the case, the complexity of the claims alleged, the status of the parties, and the context in which the claims arose. *TMT Trailer*, 390 U.S. at 444; *In re Purofied Down Products*, 150 B.R. at 519, 524; *In re Int'l Distr. Ctrs.*, 103 B.R. at 423.

51.     The settlement evaluation process is not designed to substitute the court's judgment for that of a debtor. *In re Carla Leather, Inc.*, 44 B.R. at 465. While a court is not expected to "rubber stamp" the debtor's proposed settlement, *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 426 (S.D.N.Y. 1993), the court should give considerable weight to a debtor's, or in this case, the Debtor's, informed judgment that a compromise is fair and equitable. *Anderson*, 390 U.S. at 444; *In re Int'l Distr. Ctrs.*, 103 B.R. at 423; *Drexel I*, 134 B.R. at 496; *In re Carla Leather, Inc.*, 44 B.R. at 472.

52.     As articulated by the District Court in *International Distribution Centers*, when determining the wisdom of a compromise, the court should give weight to not only the debtor's opinion, but to those of other counsel to a settlement as well. *In re Int'l Distr. Ctrs.*, 103 B.R. at

423. Ultimately, a court should consider both the proponents' opinions as well as its own independent evaluation of the arguments for and against the settlement in order to determine whether a settlement should be approved. *In re Purofied Down Products*, 150 B.R. at 52319. To constitute a fair and equitable compromise or settlement, the Court must find that the settlement does not "fall below the lowest point in the range of reasonableness.'" Cosoff v. Rodman (*In re W.T. Grant Co*)., 699 F.2d 599, 608 (2d Cir. 1983)(quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir.) *cert. denied*, 409 U.S. 1039, 93 S. Ct. 521 (1972)), *cert. denied*, 464 U.S. 822, 104 S. Ct. 89 (1983); *In re Drexel Burnham Lambert Group, Inc.*, 138 B.R. 723, 758-59 (Bankr. S.D.N.Y. 1992); *In re International Distribution Centers, Inc.*, 103 B.R. 420, 423 (Bankr. S.D.N.Y. 1989).

53.     The Court should also consider the fair and reasonable course of action for the Debtor's estate, with the limited available assets, giving consideration to the interests of creditors and the avoidance of burdening the estate with undue waste or needless or fruitless litigation. *In re Del Grosso*, 106 B.R. 165, 167-168 (Bankr. N.D. Ill. 1989) (citation omitted). *See also In re Culmtech, Ltd.*, 118 B.R. 237, 238 (Bankr. M.D. Pa. 1990); *In re Lawrence & Erausguin, Inc.*, 124 B.R. 37, 38 (Bankr. N.D. Ohio 1990); *In re Bell & Beckwith*, 93 B.R. 569, 574-75 (Bankr. N.D. Ohio 1988).

54.     The court, apprised of the facts of the controversy and the risks and costs of the litigation, is bestowed with broad discretion to approve settlements that fall within the range of reasonableness. *Purofied Down Products*, 150 B.R. at 523-24; *In re Texaco, Inc.*, 84 B.R. 893, 901 (Bankr. S.D.N.Y.), *appeal dismissed*, 92 B.R. 38 (S.D.N.Y. 1988). The proposed settlement need not be ideal, but merely above the lowest point in the range of reasonableness under the circumstances. *See W.T. Grant*, 699 F.2d at 6, 13-14; *Newman v. Stein*, 464 F.2d at 693; *In re*

*Purofied Down Products*, 150 B.R. at 523-24. The concept of a "range of reasonableness" recognizes "the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent to taking any litigation to completion." *Newman v. Stein*, 464 F.2d at 693. Thus, a court need not insist upon the best possible settlement, but may approve a settlement that is within the range of reasonableness under the circumstances.

55. In deciding whether a proposed compromise is fair and equitable, reasonable and in the best interests of creditors, courts in the Second Circuit follow the analysis first articulated by the Supreme Court in *TMT Trailer*, as developed and applied by the case law. In so following, courts judge a proposed settlement based on a consideration of *some or all* of the following factors:

(i) the relative benefits to be received by creditors under the proposed settlement;

(ii) the likelihood of success in the litigation compared to the present and future benefits offered by the proposed settlement;

(iii) the prospect of complex and protracted litigation if settlement is not approved;

(iv) the attendant expense, inconvenience and delay of litigation;

(v) the probable difficulties of collecting on any judgment that might be obtained;

(vi) the competency and experience of counsel who support the proposed settlement;

(vii) the extent to which the settlement is the product of arm's-length bargaining, and not the product of fraud or collusion;

(viii) the nature and breadth of any releases to be issued as a result of the proposed settlement; and

(ix) the paramount interest of the creditors and proper deference to their reasonable views.

*See City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974); *In re Ionosphere Clubs Inc.*, 156 B.R. 414, 427 (S.D.N.Y. 1993); *Purofied Down Products*, 150 B.R. at 522; *International Distribution Centers*, 103 B.R. at 422; *In re Fugazy*, 150 B.R. 103, 106 (Bankr. S.D.N.Y. 1993); *Drexel I*, 134 B.R. at 497; *In re Drexel Bumham Lambert Group, Inc.*, 134 B.R. 499, 506 (Bankr. S.D.N.Y. 1991) ("*Drexel II*"); *Crowthers McCall*, 120 B.R. at 287; *Texaco*, 84 B.R. at 901; *Lion Capital Group Inc.*, 49 B.R. 163, 175 (Bankr. S.D.N.Y. 1985); *Carla Leather*, 44 B.R. at 466; *In re W.T. Grant Co.*, 699 F.2d 599 (2d Cir. 1983); *see also In re Jackson Brewing Co.*, 624 F.2d 599, 602 (5th Cir. 1980); *Drexel v. Loomis*, 35 F.2d 800, 808 (8th Cir. 1929).

## II.  THE PROPOSED SETTLEMENT IS FAIR AND EQUITABLE, REASONABLE AND IN THE BEST INTERESTS OF CREDITORS

56.      The paramount interest of creditors in any bankruptcy case is to recover the greatest amount upon their allowed claims. Here, creditor recoveries are dependent on the estate's claims against Beekman. Currently, the Adversary Proceeding has been pending for three years, including interlocutory appeals, and given the remaining issues still to be tried before the Bankruptcy Court, there remains some level of uncertainty on how the Bankruptcy Court may rule on the Debtor's claims.  Additionally, given the contentious litigation by the parties over the last three-year years, any decision by the Bankruptcy Court will likely result in appellate proceedings.  Thus, it is likely that, if this case is not settled, litigation will carry risk and expense for unsecured creditors.

57.      In contrast, the Agreement: (a) resolves, together with the settlement agreement with Azari, all pending issues in the Debtor's case and allows for a distribution to unsecured creditors, (b) provides Beekman with $900,000, and (c) provides certainty, while avoiding the

costs and risks inherent in the litigation that would otherwise ensue. Thus, the Debtor submits that the Agreement furthers the paramount interests of its creditors and its estate.

### III. SUPPORTED BY THE DEBTOR'S BUSINESS JUDGMENT

58.     Alternatively, this Court should approve the relief requested in the Motion where the Debtor demonstrates a sound business justification therefor. *See In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983) ("The rule we adopt requires that a judge determining a § 363(b) application expressly find from the evidence presented before him a good business reason to grant the application"); *see also In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989).

59.     Once a debtor (or trustee) articulates a valid business justification, "[t]he business judgment rule is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc.* (*In re Integrated Res., Inc.*), 147 B.R. 650, 656 (S.D.N.Y. 1990). Courts are loath to interfere with corporate decisions absent a showing of bad faith, self-interest, or gross negligence. *Id.* Here, more than ample business justification exists.

60.     Additionally, section 105(a) of the Bankruptcy Code empowers a court to issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]. The purpose of section 105(a) is to ensure a bankruptcy court's power to take whatever action "is appropriate or necessary in aid of the exercise of [its] jurisdiction." *In re Casse*, 198 F.3d 327, 336 (2d Cir. 1999); *In re The 1031 Tax Group, LLC*, 397 B.R. 670, 684 (Bankr. S.D.N.Y. 2008).

61.     As discussed above, the Agreement represents the Debtor's sound business judgment. The Debtor will resolve its litigation with Beekman and allow unsecured creditors to receive a distribution, which might not otherwise be received, if the Adversary Proceeding continues.

62.     Accordingly, the Debtor submits that entry into the Agreement is supported by the exercise of its sound business judgment.

## IV.     THE MUTUAL RELEASES

### A.     <u>The Debtor Releases</u>

63.     The mutual releases of the Debtor by Beekman and of Beekman by the Debtor are consensual and should be approved. *See generally, In re Specialty Equip. Cos.*, 3 F.3d 1043, 1047 (7th Cir. 1993) (noting that "courts have found releases that are consensual and non-coercive to be in accord with the strictures of the Bankruptcy Code" because a consensual release binds only those creditors that elect to be bound) (*citing In re AOV Indus.*, 792 F.2d 1140 (D.C. Cir. 1986) and *In re Monroe Well Service, Inc.*, 80 B.R. 324 (Bankr. E.D. Pa. 1987)).

### B.     <u>Beekman Releases</u>

64.     In addition, Beekman has consented to the release it is providing in favor of Golsorkhi, Blank Rome and the Debtor and each of their respective past and present agents, attorneys, employees, officers, directors, shareholders, successors, assigns, members, representatives (in their capacity as such (as may be applicable)) and any subsidiary or affiliate thereof with respect to any and all actions, attorneys' fees, charges, claims, costs, demands, expenses, judgments, liabilities and causes of action of any kind, nature or description, whether matured or unmatured, contingent or absolute, liquidated or unliquidated, known or unknown, arising out of, related to, or based on any of the claims, defenses, allegations, facts,

circumstances, or issues in (i) *In re Wansdown Properties Corporation N.V.*, Ch. 11 Case No. 19-13223 (DSJ), (ii) *Wansdown Properties Corporation N.V. v. 29 Beekman Corp.*, Adv. Pro. No. 20-01056 (DSJ), (iii) *29 Beekman Corp. v. Wansdown Properties Corporation N.V., et al.*, Adv. Pro. No. 20-01063 (DSJ), (iv) *29 Beekman Corp. v. Blank Rome LLP, et al.*, Adv. Pro. No. 22-01075 (DSJ), and/or (v) the grievance complaint of Seth A. Akabas, Docket No. 2020.1175.

65.     As discussed below, the Second Circuit permits non-debtor third party releases in settlement agreements and in plans of reorganization where the releaser consents. Pursuant to the Agreement, Beekman has expressly consented to releases.

C.     **Retention of Jurisdiction**

66.     The Agreement additionally provides that no releasors under the Agreement may file, commence or pursue a claim, complaint or cause of action of any kind whatsoever, before any court, tribunal or agency, knowingly against any of the Debtor Releasees  or the Beekman Releasees, as appropriate, without first filing a motion on notice with the Bankruptcy Court seeking permission to prosecute any such claim, complaint or cause of action and obtaining authority from the Bankruptcy Court to prosecute any such complaint, claim or cause of action, upon a determination that such complaint, claim or cause of action has not been released under this Agreement, which court shall have sole and exclusive jurisdiction to determine whether any such complaint, claim or cause of action has or has not been released under the Agreement.  This "gatekeeping" provision is intended to prevent or at least severely limit future litigation risk over claims released in the Agreement.   Such provision is necessary and proper under the circumstances of this case, and similar gatekeeping provisions have been used in other cases and approved by the courts.  *Nexpoint Advisors, L.P. v. Highland Capital Mgmt., L.P. (In re*

*Highland Cap. Mgmt., L.P. (Highland II))*, 48 F.4th 419 (5th Cir. 2022); *In re Highland Cap.*
*Mgmt., L.P. (Highland III)*, No. 19-34054, 2023 WL 2250145 (Bankr. N.D. Tex. Feb. 27, 2023).

## V.       ORDER IN AID OF SUBSTANTIAL CONSUMMATION

67.       Section 1142(b) of the Bankruptcy Code provides that Courts may "direct the
debtor and any other necessary party to . . . perform any other act  . . . that is necessary for the
consummation of the plan. Based upon Bankruptcy Code section 1142(b) and terms generally set
forth in chapter 11 plans, courts regularly enter orders aiding previously confirmed plans of
reorganization. *See, e.g., In re Chateaugay Corp.*, 201 B.R. 48, 62–63 (Bankr. S.D.N.Y. 1996),
aff'd in part, 213 B.R. 633 (S.D.N.Y. 1997) *(citing) Paris Indus. Corp*., 132 B.R. at 508; *White
Motor Credit Corp.,* 75 B.R. at 947; *63; I*n re Texaco*, 182 B.R. 937, 944
(Bankr.S.D.N.Y.1995); *Mihnlong Enterprises, Inc. v. New York International Hostel (In re New
York International Hostel ),* 157 B.R. 748, 751 (S.D.N.Y.1993); *In re Johns–Manville Corp.*, 97
B.R. 174, 180 (Bankr.S.D.N.Y.1989) (bankruptcy courts retain post-confirmation jurisdiction to
interpret and enforce their own orders in aid of their proper execution).

68.       The settlement set forth in the Agreement, along with the settlement with Azari,
removes one of the largest significant barriers under the Plan, to making a distribution to general
unsecured creditors.[3]  In addition to the relief sought under Section 9019 and Section 105(a), the
Debtor submits that the relief sought herein, including with respect to the third party releases and
the notice period is consistent with Bankruptcy Code section 1142 and Section 12 of the Plan
which provided that the Bankruptcy Court will retain jurisdiction to facilitate the performance of
the Plan by entering, consistent with the provisions of the Plan, any further necessary or
appropriate order regarding enforcement of the Plan and any provision thereof. In addition, the

---

[3] The Debtor intends to make a distribution to unsecured creditors, after its professionals file any remaining
applications for administrative expense claims.

Bankruptcy Court will retain jurisdiction to facilitate or implement the allowance, disallowance, treatment or satisfaction of any Claim (as defined in the Plan), or any portion thereof, pursuant to the Plan.

## **RESERVATION OF RIGHTS**

69.     Nothing herein shall be construed as an admission of any liability or waiver of any rights of the Debtor.

## **NOTICE OF THIS MOTION**

70.     The notice of this Motion shall be provided to and shall be served upon  (i) the Office of the United States Trustee for the Southern District of New York; (ii) all parties that filed proofs of claim in this case or whose claims have otherwise been scheduled; (iii) all parties requesting notice under Bankruptcy Rule 2002; (iv) Beekman; and (v) any other party directly affected by this Motion.

71.     The Debtor submits that such notice is sufficient under the circumstances.

## **NO PREVIOUS REQUEST**

72.     No previous request for the relief sought herein has been made to this or any other Court.

WHEREFORE the Debtor respectfully requests that the Bankruptcy Court enter an order approving the Agreement, annexed hereto as Exhibit A, granting the relief requested herein and such other and further relief as the Bankruptcy Court may deem just and appropriate.

Dated: December 15, 2023
New York, New York

**BLANK ROME LLP**

By: /s/ Ira L. Herman
Ira L. Herman, Esq.
1271 Avenue of the Americas
New York, New York 10020
Telephone: (212) 885-5000
ira.herman@blankrome.com
*Special Litigation Counsel for Plaintiff*

**EXHIBIT A**

**BLANK ROME LLP**
1271 Avenue of the Americas
New York, NY 10020
Tel:   212-885-5000
Fax:  212-885-5001
Ira L. Herman
Deborah A. Skakel
Michael Silberfarb

*Special Litigation Counsel for Plaintiff*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------ x
In re:

WANSDOWN PROPERTIES CORPORATION N.V.,

           Debtor.

Chapter 11

Case No.  19-13223 (DSJ)

------------------------------------------------------------------ x
WANSDOWN PROPERTIES CORPORATION N.V.,

           Plaintiff,

           v.

29 BEEKMAN CORP.,

           Defendant.

Adv. Pro. No. 20-01056 (DSJ)

------------------------------------------------------------------ x

## STIPULATION OF DISMISSAL AND SETTLEMENT AGREEMENT

This Stipulation of Dismissal and Settlement Agreement (the "**Agreement**") is entered into by and between Wansdown Properties Corporation N.V. (the "**Debtor**"), on the one hand, and 29 Beekman Corp. ("**Beekman**") on the other hand. Each of the Debtor and Beekman Defendants is referred to herein as a "**Party**," and together as the "**Parties**."

## RECITALS

A.     WHEREAS, on September 25, 2019, prior to the commencement of Wansdown's bankruptcy case, Wansdown and Beekman entered into a contract (the "**Purchase Agreement**")



for the sale of the property located at 29 Beekman Place, New York, New York (the "**Townhouse**") and a separate agreement for the sale of certain furniture.

B.      WHEREAS, on October 7, 2019, pursuant to the Purchase Agreement, 29 Beekman made a down payment of $1,030,000.00, to be held by Blank Rome in escrow

C.      WHEREAS, on October 8, 2019 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**").

D.      WHEREAS, from the Petition Date through confirmation of the Debtor's chapter 11 plan, on July 16, 2020, the Debtor served as a debtor in possession, and from and after confirmation of the Debtor's chapter 11 plan, the Debtor has served as the Reorganized Debtor (as defined in the Debtor's chapter 11 plan).

E.      WHEREAS, on December 2, 2019, Wansdown filed its first Chapter 11 Plan [Main ECF No. 26], which was re-filed as amended on December 9, 2019 [Main ECF No. 30] (the "First Plan").

F.      WHEREAS, on December 31, 2019, Pelmadulla Stifung, Vaduz ("**Pelmadulla**"), filed a proof of claim against Wansdown in the amount of $3,242,941.19 (the "**Pelmadulla Claim**").

G.      WHEREAS, on January 7, 2020, Wansdown filed a motion for approval of the Purchase Agreement and the Letter Agreement pursuant to 11 U.S.C. §§ 363 and 365 (the "**Sale Motion**").

H.      WHEREAS, on January 14, 2020, the Bankruptcy Court stated that it would not be possible to confirm the First Plan by January 31, 2020, because it was premised on repaying all

2

creditors other than Golsorkhi, and Wansdown would have to file a new plan if it still sought to obtain a confirmed plan

I.      WHEREAS, the sale of the Townhouse was not consummated, and the parties dispute each other's respective obligations under the Purchase Agreement and who was responsible for the failure to close on the Townhouse.

J.      WHEREAS, on February 26, 2020, Wansdown commenced an adversary proceeding against Beekman (Adv. Pro. No., 20-1056, the "**1056 Proceeding**") claiming that 29 Beekman had breached the Purchase Agreement and seeking a declaratory judgment that Wansdown was entitled to retain the down payment thereunder.

K.      WHEREAS, on March 11, 2020, the Bankruptcy Court authorized the Debtor to use a portion of the security deposit it received from Beekman to pay for certain approved administrative expenses during the pendency of the Debtor's bankruptcy case and provided Beekman and Azadeh Azari ("**Azari**") a first priority lien on the funds disbursed. [*See* Case No. 19-13223, ECF No. 80] After the sale of the Debtor's assets under the Second Sale Contract (as defined below), such amounts, we returned to the segregated account representing the deposit paid by Beekman.

L.      WHEREAS, on March 13, 2020, 29 Beekman filed a motion to dismiss the 1056 Proceeding. [1056 ECF No. 6].

M.      WHEREAS, on March 19, 2020, while 29 Beekman's motion to dismiss was pending, Wansdown requested leave to file a motion for summary judgment. [1056 ECF No. 7]

N.      WHEREAS, on March 25, 2020, 29 Beekman commenced an adversary proceeding Adv. Pro. No., 20-1063 (the "**1063 Proceeding**") the 1063 Proceeding against Wansdown, Blank Rome, and Golsorkhi, seeking damages for fraud, damages for breach of the



Purchase Agreement, and declaratory relief in connection with the Property Sale. [1063 ECF No. 1].

O.     WHEREAS, on April 8, 2020, Wansdown moved for summary judgment in the 1056 Proceeding. [1056 ECF No. 12].

P.     WHEREAS, on April 23, 2020, 29 Beekman filed its Amended Complaint in the 1063 Proceeding. [1063 ECF No. 3].

Q.     WHEREAS, on May 1, 2020, the Court entered an Order procedurally consolidating the 1063 Proceeding with the 1056 Proceeding such that any future filings in the 1063 Proceeding would instead be filed in the 1056 Proceeding. [1063 ECF No. 4].

R.     WHEREAS, on May 7, 2020, 29 Beekman cross-moved for summary judgment in the 1056 Proceeding. [1056 ECF No. 27].

S.     WHEREAS, by motion dated June 5, 2020, Wansdown "announced that it had 'negotiated and entered into[']" a new contract to sell the Property to a new buyer for $11,500,000, "subject to higher and better offers pursuant to bidding procedures that are approved by the Court" (the "**Second Sale Contract**"). [1075 ECF No. 1 at 35–36 of 75; *see generally* Main ECF No. 102].

T.     WHEREAS, on June 9, 2020, Wansdown filed its Second Amended Chapter 11 Plan (as amended and modified, including on June 16, 2020, the "**Second Plan**"), which provided for approval of the Second Sale Contract. [*See generally* Main ECF No. 105].

U.     WHEREAS, on August 5, 2020, pursuant to the Second Plan and the Second Sale Contract, Wansdown sold the Property for $11.5 million

V.     WHEREAS, on October 5, 2020, the Court denied the cross-motions for summary judgment in the 1056 Proceeding (the "**Summary Judgment Decision**"). [1056 ECF No. 60].

4



W.     WHEREAS, on October 19, 2020, Beekman filed a notice of appeal and thereafter moved the United States District Court for the Southern District of New York (the "**District Court**") for leave to file an interlocutory appeal of the Summary Judgment Decision (the "**Interlocutory Appeal**"), which Wansdown opposed.

X.     WHEREAS, on October 19, 2020, Beekman filed a motion for reconsideration of the Court's denial of its summary judgment motion. [1056 ECF No. 62].

Y.     WHEREAS, on November 3, 2020, Beekman commenced an action against Blank Rome and Golsorkhi in New York State Supreme Court, pleading claims of fraud, aiding and abetting fraud, and breach of contract. [1075 ECF No. 1 at 18–51 of 75], which action was removed on April 5, 2022, and subsequently designated as Adv. Pro. No. 22-1075 (the "**1075 Proceeding**"). [See generally 1075 Proceeding docket sheet].

Z.     WHEREAS, on January 6, 2021, the Court denied in part and granted in part 29 Beekman's motion for reconsideration of its denial of summary judgment (the "**Reconsideration Decision**"). [1056 ECF No. 78].

AA.     WHEREAS, on February 19, 2021, following a round of supplemental briefing, the Court issued a decision that, *inter alia*, stated "[s]till to be tried is what the parties intended when they agreed that the sale proceeds would be sufficient to satisfy the claims 'as reasonably projected,' and whether the Debtor would have been able to satisfy that condition precedent at the time of the scheduled Closing.'" [1056 ECF No. 82 at 9]

BB.     WHEREAS, on March 15, 2021, Beekman filed a motion to withdraw the reference with respect to the 1075 Proceeding and the 1056 Proceeding.

CC.     WHEREAS, on September 21, 2021, the District Court entered its Opinion and Order Denying 29 Beekman Corporation's Motion for Leave to File an Interlocutory Appeal,

Denying the Motion to Withdraw the Bankruptcy Reference, and Referring Case to the Bankruptcy Court.

DD.    WHEREAS, on May 27, 2022, 29 Beekman filed its Motion to Amend the 1063 Complaint [1056 ECF No. 100] along with, *inter alia,* its Proposed Second Amended Complaint.

EE.    WHEREAS, on March 3, 2023, the Bankruptcy Court entered its *Memorandum Opinion and Order Resolving Motions to Dismiss and Motions to Amend* (the "**Dismissal Decision**"), in which the Bankruptcy Court dismissed the 1063 Proceeding and 1075 Proceeding and denied Beekman's request to amend the complaint in the 1063 Proceeding.

FF.    WHEREAS, on April 26, 2023, Beekman appealed the Dismissal Decision to the District Court, which appeal has been fully briefed and is pending a decision by the District Court (the "**Pending Appeal**").

GG.    WHEREAS, on May 2, 2023, Beekman filed its Answer in the 1056 Proceeding.

HH.    WHEREAS, the parties have conducted negotiations and have determined to resolve the matter in its entirety on the terms agreed to below.

II.    WHEREAS, concurrently with its negotiations with Beekman, the Debtor has also negotiated with Azari and agreed to a consensual resolution of all outstanding disputes between Azari, the Debtor, and related parties memorialized into a settlement agreement (the "**Azari Agreement**") filed with the Bankruptcy Court and subject to Bankruptcy Court approval.

**NOW, THEREFORE**, in consideration of the recitals, covenants, and agreements contained herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, each of the Parties promises, undertakes and agrees as follows:

1.    As of the Settlement Effective Date (defined below), pursuant to Rule 41(a)(1) of the Federal Rules of Civil Procedure, made applicable by Rule 7041 of the Federal Rules of

Bankruptcy Procedure, the Complaint is hereby deemed voluntarily dismissed as against Beekman with prejudice, provided, however, that Beekman (a) waives any distribution in the Debtor's chapter 11 case, other than the Settlement Amount, as defined below, (b) is hereby forever barred from objecting to (i) any claim filed or scheduled in the Debtor's Chapter 11 case; (ii) the request for allowance or payment of any professional fee or expense in the Debtor's Chapter 11 case, and (iii) the settlement, allowance, or dismissal of any claim, adversary proceeding or cause of action in or related to the Debtor's Chapter 11 case, and (c) shall not prosecute or pursue any claim whatsoever, and is hereby deemed to withdraw any action pending in any court or before any tribunal that relates to the claims being released in paragraph 6. below and claims related thereto, to the fullest extent permitted by law, except in regard to enforcement of this Agreement and the Beekman 9019 Order.

2.      Within five (5) business days following execution of this Agreement by the last signatory hereon, the Debtor shall file in the Bankruptcy Court and serve, pursuant to the applicable laws and rules, a motion, subject to prior review and approval by 29 Beekman, seeking entry of the Beekman 9019 Order (as defined herein) pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure. Among other provisions, the motion shall request that the Court (a) retain jurisdiction over the Adversary Proceeding, until all matters pertaining to this Agreement are fully and finally resolved, and (b) retain exclusive jurisdiction to enforce the provisions of this Agreement.

3.      In full and final settlement and satisfaction of its claims in the Adversary Proceeding and in the Debtor's chapter 11 case, Beekman shall receive the sum of $900,000.00 (the "**Settlement Amount**").

4.     The effectiveness of this Agreement shall be subject to (a) the entry of an order approving this Agreement by the Bankruptcy Court in form reasonably satisfactory to the Debtor and Beekman (the "**Beekman 9019 Order**"), and (b) the entry of an order approving the Azari Agreement (the "**Azari 9019 Order**" and collectively with the Beekman 9019 Order, the "**9019 Orders**"), which orders shall no longer be subject to appeal or to motion to reargue (the "**Final Orders**"). Upon the 9019 Orders becoming Final Orders (the "**Settlement Effective Date**"), the Settlement Amount shall be released to the undersigned counsel for Beekman by wire transfer as follows:

> The Serbagi Law Firm, P.C.
> JPMorgan Chase Bank,
> 360 Park Ave New York, NY 10022
> Routing No. 021000021
> Acct. No. 920973620

5.     Within five (5) business days following the Settlement Effective Date, Beekman shall file with the District Court a motion to dismiss the Pending Appeal, pursuant to Bankruptcy Rule 8023, that provides that each party shall bear its own costs and that costs will not be taxed on either party.

6.     Upon the occurrence of (a) the Settlement Effective Date, (b) the release of the Settlement Amount to the undersigned counsel for the Beekman, and (c) in consideration of the promises and covenants contained herein, Beekman, and each of its respective past and present agents, attorneys, employees, officers, directors, shareholders, successors, assigns, members, representatives (in their capacity as such (as may be applicable)) and any subsidiary or affiliate thereof (the "**Beekman Releasors**"), forever, irrevocably and unconditionally release and discharge the Debtor, Blank Rome LLP (in its individual capacity and in its capacity as escrow agent) and Gholam Reza Golsorkhi, and each of their respective past and present agents, attorneys,

8



employees, officers, directors, shareholders, successors, assigns, members, representatives (in their capacity as such (as may be applicable)) and any subsidiary or affiliate thereof (collectively, the "**Debtor Releasees**"), from any and all actions, attorneys' fees, charges, claims, costs, demands, expenses, judgments, liabilities and causes of action of any kind, nature or description, whether matured or unmatured, contingent or absolute, liquidated or unliquidated, known or unknown, which the Beekman Releasors may now have, have ever had, or may in the future have against the Debtor Releasees, arising out of, related to, or based on any of the claims, defenses, allegations, facts, circumstances or issues in (i) *In re Wansdown Properties Corporation N.V.*, Ch. 11 Case No. 19-13223 (DSJ), (ii) *Wansdown Properties Corporation N.V. v. 29 Beekman Corp.*, Adv. Pro. No. 20-01056 (DSJ), (iii) *29 Beekman Corp. v. Wansdown Properties Corporation N.V., et al.*, Adv. Pro. No. 20-01063 (DJJ), (iv) *29 Beekman Corp. v. Blank Rome LLP, et al.*, Adv. Pro. No. 22-01075 (DSJ), and/or (v) the grievance complaint of Seth A. Akabas, Docket No. 2020.1175. In addition, Beekman on its own behalf and on behalf of its successors and assigns, and on behalf of its attorneys, employees, agents, directors, officers, and shareholders, agrees not to commence or continue any action, lawsuit, adversary proceeding or other legal, equitable or administrative proceeding that asserts any direct or indirect released claims against the Debtor Releasees. For the avoidance of doubt, the releases provided herein in favor of the Debtor Releasees do not in any manner whatsoever extend to the obligation of the Debtor Releasees under this Agreement.

7.     Upon the occurrence of (a) the Settlement Effective Date, (b) the release of the Settlement Amount to the undersigned counsel for Beekman, and (c) in consideration of the promises and covenants contained herein, the Debtor Releasees forever, irrevocably and unconditionally release and discharge Beekman and its past and present agents, attorneys,

employees, officers, directors, shareholders, successors, assigns, members, representatives (in their capacity as such) and any subsidiary or affiliate thereof (collectively, the "**Beekman Releasees**"), from any and all actions, attorneys' fees, charges, claims, costs, demands, expenses, judgments, liabilities and causes of action of any kind, nature or description, whether matured or unmatured, contingent or absolute, liquidated or unliquidated, known or unknown, which the Debtor Releasees may now have, have ever had, or may in the future have against the Beekman Releasees, arising out of, related to, or based on any of the claims, defenses, allegations, facts, circumstances, or issues in (i) *In re Wansdown Properties Corporation N.V.*, Ch. 11 Case No. 19-13223 (DSJ), (ii) *Wansdown Properties Corporation N.V. v. 29 Beekman Corp.*, Adv. Pro. No. 20-01056 (DSJ), (iii) *29 Beekman Corp. v. Wansdown Properties Corporation N.V., et al.*, Adv. Pro. No. 20-01063 (DJJ), (iv) *29 Beekman Corp. v. Blank Rome LLP, et al.*, Adv. Pro. No. 22-01075 (DSJ), and/or (v) the grievance complaint of Seth A. Akabas, Docket No. 2020.1175 In addition, the Debtor Releasees on their own behalf and on behalf of each of their successors and assigns, agree not to commence or continue any action, lawsuit, adversary proceeding or other legal, equitable or administrative proceeding that asserts any direct or indirect released claims against the Beekman Releasees. For the avoidance of doubt, the releases provided herein in favor of the Beekman Releasees do not in any manner whatsoever extend to the obligation of the Beekman Releasees under this Agreement.

8.      No releasor under Paragraphs 6 and 7 of this Agreement may file, commence or pursue a claim, complaint or cause of action of any kind whatsoever, before any court, tribunal or agency, knowingly against any of the Debtor Releasees or the Beekman Releasees, as appropriate, without first filing a motion on notice with the Bankruptcy Court seeking permission to prosecute any such claim, complaint or cause of action and obtaining authority from the Bankruptcy Court

to prosecute any such complaint, claim or cause of action, upon a determination that such complaint, claim or cause of action has not been released under this Agreement, which court shall have sole and exclusive jurisdiction to determine whether any such complaint, claim or cause of action has or has not been released under this Agreement.

9.	Each of the Parties acknowledge that such party is receiving reasonably equivalent value in exchange for the consideration of such party is providing under this Agreement.

10.	Each of the Parties shall be solely responsible for their respective own attorneys' fees and costs incurred in connection with this Agreement and the negotiations leading to the execution of this Agreement.

11.	The Parties acknowledge that this Agreement is being entered into, and the consideration is being provided, in full compromise and settlement of disputed claims for the purpose of avoiding further dispute, trouble, litigation, risk, and expense by each Party.

12.	The Parties acknowledge that neither the fact of the compromise and settlement, nor the payment of any consideration hereunder, nor the execution of this Agreement shall be taken in any way as an admission of any liability or wrongdoing of any sort whatsoever by either Party.

13.	The Parties acknowledge that no fact pertaining to the making or consummation of this Agreement, nor the Agreement itself, shall be admissible in any proceeding or cause of action (except an action to enforce this Agreement) as an admission of any liability or responsibility by the Parties. Rather, all such liability or wrongdoing is expressly denied.

14.	This Agreement constitutes the final agreement between the Parties, contains all of the final covenants, terms and conditions agreed upon by the Parties to this Agreement, and terminates, supersedes, and replaces any and all prior arrangements, understandings, representations, promises, inducements, or other communications, whether written or oral,



between the Parties. No other agreements, oral or otherwise, shall be deemed to exist or to bind either of the Parties hereto. Each Party declares and represents that no understandings, statements, promises, or inducements contrary to the terms of this Agreement exist. This Agreement can only be amended in a writing signed by the Parties hereto unequivocally indicating their intention to modify the Agreement.

15.     If any provision of this Agreement or its application to any person or circumstance is held invalid, the invalidity will not affect other provisions or applications of this Agreement that can be given effect without the invalid provision or application. This Agreement, any disputes which may arise in connection with the interpretation or enforcement of the Agreement, and the rights and obligations of the Parties generally shall be governed by the laws of the State of New York, without regard or reference to choice or conflict of law rules and principles.

16.     The Parties acknowledges and represent that they, respectively have not assigned any claim of whatever nature or kind against that is the subject of the within Adversary Proceeding or covered by this Agreement to any third party prior to the date of this Agreement. .

17.     This Agreement may be executed in multiple counterparts, each of which shall constitute an original, and a signature sent by facsimile to counsel for the other Parties shall have the same force and effect as an original signature.

18.     A fully executed copy of this Agreement shall be treated as an original for all purposes.

19.     Each of the Parties acknowledges and represents that:

(a)     it has the right, power, legal capacity, and authority to enter into and to perform each of the obligations undertaken in this Agreement;



(b)     each of the covenants and agreements contained in this Agreement shall inure to the benefit of and bind the Parties hereto, their respective agents, successors, representatives, heirs and/or assigns;

(c)     it has read this Agreement;

(d)     it clearly understands this Agreement and each of its terms;

(e)     it has had the benefit and advice of counsel of its own selection;

(f)     each and every term and provision in this Agreement has been mutually agreed to and negotiated by it, and shall be construed simply according to its fair meaning and not strictly for or against any Party, including any negative inference against the Party that drafted this Agreement;

(g)     in executing this Agreement, they do not rely and have not relied upon any representation or statement made by any of the other Parties or any of their agents, shareholders, representatives, or attorneys, with regard to the subject matter, basis or effect of this Agreement or otherwise, other than as specifically stated in this Agreement; and

(h)     it has executed this Agreement freely, with knowledge, and without influence or duress.

(i)     The Parties shall execute, acknowledge, and deliver and record such further instruments and do such further acts as may be reasonably necessary, desirable, or proper to carry out more effectively the intent and purposes of this Agreement.

*[Remainder of Page Intentionally Left Blank]*

IN WITNESS WHEREOF, the Parties execute this Agreement by their duly authorized representatives.

Dated:  December 14, 2023
New York, New York

**WANSDOWN PROPERTIES**
**CORPORATION N.V.**

By: _____
Gholam Reza Golsorkhi
President
Wansdown Properties Corporation
N.V.

**29 BEEKMAN CORP.**

By: _____
Name:
Title:

**BLANK ROME LLP**

By: _____
Deborah A. Skakel
Partner
1271 Avenue of the Americas
New York, NY 10020

**SO ORDERED:**

Dated: January __, 2024

_____
United States Bankruptcy Judge

IN WITNESS WHEREOF, the Parties execute this Agreement by their duly authorized representatives.

Dated: December 14, 2023
New York, New York

**WANSDOWN PROPERTIES**
**CORPORATION N.V.**

By: _____
        Gholam Reza Golsorkhi
        President
        Wansdown Properties Corporation
        N.V.

**29 BEEKMAN CORP.**

By: _____
Name: Seth Akabas
Title: President

**BLANK ROME LLP**

By: _____
        Deborah A. Skakel
        Partner
        1271 Avenue of the Americas
        New York, NY 10020

**SO ORDERED:**

Dated: January ___, 2024

_____
United States Bankruptcy Judge

14

IN WITNESS WHEREOF, the Parties execute this Agreement by their duly authorized representatives.

Dated: December 14, 2023
       New York, New York

**WANSDOWN PROPERTIES**      **29 BEEKMAN CORP.**
**CORPORATION N.V.**

By: _____      By: _____
    Gholam Reza Golsorkhi      Name:
    President      Title:
    Wansdown Properties Corporation
    N.V.

**BLANK ROME LLP**

By: _Deborah A. Skakel_
    Deborah A. Skakel
    Partner
    1271 Avenue of the Americas
    New York, NY 10020

**SO ORDERED:**

Dated: January __, 2024

                               _____
                               United States Bankruptcy Judge